[866 NYS2d 797]

In the Matter of the Claim of Benjamin Amoah, Respondent, v Mallah Management, LLC, et al., Appellants. Worker's Compensation Board, Respondent.

Third Department, October 30, 2008

**APPEARANCES OF COUNSEL**

*Fischer Brothers*, New York City (*Martin Krutzel* of counsel), for appellants.

*Andrew M. Cuomo, Attorney General*, Albany (*Andrew B. Ayers* of counsel), for Workers' Compensation Board, respondent.

### OPINION OF THE COURT

STEIN, J.

Claimant, a citizen of Ghana, came to this country in March 2003 under a visa which permitted him to stay until October 2003, but which did not authorize him to work. Claimant met Frank Boahen-Appiah who allowed claimant to stay with him and use his driver's license, Social Security card and other documents in order to obtain work. In April 2003, claimant found work as a parking garage attendant utilizing Boahen-Appiah's name and documents. In April 2005, after the expiration of his visa, claimant was injured in the course of his employment. His employer submitted a claim on his behalf to its workers' compensation carrier for benefits, and payments were commenced under Boahen-Appiah's name. Boahen-Appiah thereafter demanded that claimant divide the workers' compensation benefits with him and give him two thirds of any recovery in a third-party action concerning the accident. Claimant refused and Boahen-Appiah took back his documentation and directed claimant to leave his home. In September 2005, claimant notified the employer's workers' compensation carrier of his real identity. In November 2005, the carrier notified the Workers' Compensation Board that it was contesting the payment of benefits to claimant based on claimant's utilization of fraudulent documents to obtain employment.

After conducting hearings, a Workers' Compensation Law Judge (hereinafter WCLJ) found that claimant's use of fraudulent documentation did not preclude the award of benefits. The WCLJ established work-related injuries and awarded benefits. The employer sought review by the Board, limiting its appeal to its contention that the WCLJ erred in awarding claimant wage replacement benefits. The Board affirmed the WCLJ's decision and the employer and its workers' compensation carrier (hereinafter collectively referred to as the employer) now appeal. We affirm.

The employer contends that the Immigration Reform and Control Act of 1986 (*see* 8 USC § 1324a *et seq.* [hereinafter IRCA]), as interpreted by the United States Supreme Court in *Hoffman Plastic Compounds v NLRB* (535 US 137 [2002]), preempts the awarding of wage replacement benefits in New York in cases where, as here, the claimant obtained employment through the use of fraudulent documents, which is a criminal violation of IRCA. In determining whether state law is preempted by federal law pursuant to the Supremacy Clause (*see* US Const, art VI, cl 2), we must determine congressional intent (*see Rosario v Diagonal Realty, LLC*, 8 NY3d 755, 763 [2007], *cert denied* 552 US —, 128 S Ct 1069 [2008]). Such intent

> "may be discerned in three ways: (1) expressly in the language of the [f]ederal statute; (2) implicitly, when the [f]ederal legislation is so comprehensive in scope that it is inferable that Congress intended to fully occupy the 'field' of its subject matter; or (3) implicitly, when [s]tate law actually 'conflicts' with [f]ederal law" (*Drattel v Toyota Motor Corp.*, 92 NY2d 35, 42 [1998] [citation omitted]).

Here, it is undisputed that express preemption and "field" preemption are not applicable. Thus, the question before us is whether the Workers' Compensation Law is preempted under the doctrine of conflict preemption—defined, as pertinent here, as a situation " 'where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' " (*Balbuena v IDR Realty LLC*, 6 NY3d 338, 356 [2006], quoting *Ray v Atlantic Richfield Co.*, 435 US 151, 158 [1978]).

> "What constitutes a sufficient obstacle 'is a matter of judgment,' to be informed by reference to the overall federal statutory scheme . . . The mere fact of 'tension' between federal and state law is generally not enough to establish an obstacle supporting preemption, particularly when the state law involves the exercise of traditional police power" (*Madeira v Affordable Hous. Found., Inc.*, 469 F3d 219, 241 [2006] [citations omitted]).

"The particular circumstances in which the state and federal laws interact must be carefully considered in deciding whether conflict preemption can appropriately be implied" (*id.* at 243). Congressional intent to preempt may be inferred from a conflict only where state law prevents the accomplishment of a federal

statute's "primary overriding goal" (*Drattel v Toyota Motor Corp.*, 92 NY2d at 52).

We start with the presumption that Congress " '[did] not intend to supplant state law' " (*Balbuena v IDR Realty LLC*, 6 NY3d at 356 [citation omitted]), especially laws regarding "the states' historic police powers over occupational health and safety issues" (*id.*). It is also well settled that the status of an injured worker as an undocumented alien does not, in and of itself, prohibit an award of workers' compensation benefits (*see e.g. Matter of Ramroop v Flexo-Craft Print., Inc.*, 11 NY3d 160, 168 [2008]; *Matter of Testa v Sorrento Rest.*, 10 AD2d 133, 135 [1960], *lv denied* 8 NY2d 705 [1960]) or recovery for lost earnings in a personal injury action predicated on state Labor Law violations (*see Balbuena v IDR Realty LLC*, 6 NY3d at 358-359). In *Balbuena*, the Court of Appeals explained that IRCA seeks to combat the employment of undocumented workers and found that such objective would not be hindered—and, indeed, would be furthered—by state laws imposing liability on employers under the Labor Law for their undocumented workers' injuries. Although, in that case, the Court of Appeals expressly relied on the absence of proof that the plaintiffs had committed a criminal act in violation of IRCA, that Court left open the question presented here of whether such a violation would necessarily lead to a different result.[1] We find, under the circumstances here, that it does not.

IRCA "makes it unlawful for employers knowingly to hire undocumented workers or for employees to use fraudulent documents to establish employment eligibility" (*Hoffman Plastic Compounds v NLRB*, 535 US at 141). It is intended to deter employers, through penalties, from hiring undocumented aliens—thus indirectly discouraging illegal aliens from coming to this country anticipating employment (*see* HR Rep 99-682 [I], 99th Cong, 2d Sess, at 46, reprinted in 1986 US Code Cong & Admin News, at 5650)—not "to undermine or diminish in any way labor protections in existing law" (HR Rep 99-682 [I], 99th Cong, 2d Sess, at 58, reprinted in 1986 US Code Cong & Admin

---

1. Similarly, in *Madeira v Affordable Hous. Found., Inc.* (469 F3d 219 [2006], *supra*), the Second Circuit Court of Appeals, in determining that "New York law does not conflict with federal immigration law or policy in allowing an injured worker to be compensated for some measure of lost earnings at United States pay rates" (*id.* at 228), limited its conclusion to, among other things, situations where the employee had not violated IRCA, and specifically noted that "we need not consider the effect of an employee's immigration fraud on a workers' compensation claim" (*id.* at 246 n 27).

News, at 5662). Thus, the proscriptions against obtaining employment by submitting fraudulent documentation must be viewed in the context of the employer's obligations to use due diligence in ascertaining the employee's status and the penalties imposed upon the employer for violating IRCA.[2] In this context, we find that "limiting a [reduced earnings] claim by an injured undocumented alien would lessen an employer's incentive to . . . supply all of its workers the safe workplace that the Legislature demands" (*Balbuena v IDR Realty LLC*, 6 NY3d at 359). Thus, such a result would actually provide an economic incentive to employers to violate IRCA by disregarding the employment verification system and would undermine IRCA's primary goal of combating the employment of undocumented workers (*see id.* at 359-360). On the other hand, it is unlikely that denying wage-replacement benefits to injured unauthorized workers will deter illegal aliens from violating IRCA in order to obtain employment in the first place.

Nor does the decision in *Hoffman Plastic Compounds v NLRB* (535 US 137 [2002], *supra*) compel a different result. That case did not involve either an issue of preemption or a situation involving bodily injury to an employee, a significant distinction (*see Madeira v Affordable Hous. Found., Inc.*, 469 F3d at 236). Rather, it addressed the question of whether an undocumented worker who had been terminated for union activities was precluded from receiving an award of back pay under one federal statute by virtue of his having obtained his employment by presenting fraudulent documents in violation of IRCA. While the worker's termination was unlawful under the National Labor Relations Act, it was effectively required by IRCA, thus presenting a direct conflict (*see id.*). In addition, to qualify for the back pay, the worker would have been required to remain in this country illegally and, in order to mitigate damages, find future employment—both of which would have required a future violation of IRCA (*see e.g. Matter of Ramroop v Flexo-Craft Print., Inc.*, 11 NY3d at 168). Furthermore, the Court in *Hoffman* noted that Congress could not have " 'intended to compel employers to retain persons in their employ regardless of their unlawful conduct,—to invest those who go on strike with an immunity from discharge . . . which they would not have enjoyed had

---

**2.** We note that the record here is devoid of any evidence with respect to the employer's due diligence in its efforts to comply with IRCA in reviewing the documentation provided by claimant to verify his eligibility for employment (*see* 8 USC § 1324a [b]).

they remained at work' " (*Hoffman Plastic Compounds v NLRB* (535 US at 143 [citation omitted]).[3]

In contrast to the back pay at issue in *Hoffman*—which represented wages that the employee would have earned had he not been illegally terminated—wage replacement benefits under the Workers' Compensation Law constitute a form of consideration (i.e., insurance) that formed a part of the contract for services already rendered by the employee. Furthermore, there is no conflict between IRCA and state laws requiring maintenance of a safe work place. Significantly, in view of the determination that claimant is totally disabled and, therefore, is under no obligation to seek employment, among other things, there is no evidence here that the award would require claimant to commit or continue to commit an IRCA violation or otherwise present a "definite and positive obstacle to the effective operation of [federal immigration] policy" (*Madeira v Affordable Hous. Found., Inc.*, 469 F3d at 247).[4] Accordingly, under the particular circumstances present here, we conclude that the decision of the Board is correct and we decline to disturb it.

MERCURE, J.P., PETERS, SPAIN and MALONE JR., JJ., concur.

Ordered that the decision is affirmed, without costs.

---

**3.** Moreover, at least one federal court has found no IRCA preemption, notwithstanding the decision in *Hoffman*, even where undocumented workers had fraudulently obtained employment, allowing them to bring claims against their employer under federal and state labor laws, as well as under the federal Racketeer Influenced and Corrupt Organizations Act (*see Flores v Limehouse*, 2006 WL 1328762, *3, 2006 US Dist LEXIS 30433, *6-7 [D SC 2006]).

**4.** We also note the absence of any record evidence that federal authorities have commenced legal proceedings to determine claimant's immigration status.