Matter of Policarpio v Rally Restoration Corp. (2020 NY Slip Op 07442)





Matter of Policarpio v Rally Restoration Corp.


2020 NY Slip Op 07442


Decided on December 10, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 10, 2020

530531

[*1]In the Matter of the Claim of Julio Policarpio, Appellant,
v
Rally Restoration Corp. et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date: October 21, 2020

Before: Egan Jr., J.P., Mulvey, Aarons, Pritzker and Colangelo, JJ.


The Perecman Firm PLLC, New York City (Edward Guldi of counsel), for appellant.
Gitto & Niefer, LLP, Binghamton (Jason M. Carlton of counsel), for Rally Restoration Corp. and another, respondents.



Egan Jr., J.P.
Appeal from a decision of the Workers' Compensation Board, filed May 9, 2019, which ruled, among other things, that claimant failed to demonstrate attachment to the labor market and rescinded his prior award of workers' compensation benefits.
Claimant, a construction worker, was injured at work on January 4, 2017 and has established injuries to his back, neck, left ankle and left knee. As relevant here, claimant was awarded workers' compensation benefits at a temporary partial disability rate and, after the employer and its workers' compensation carrier raised the issue of labor market attachment, those benefits were discontinued due to claimant's failure to document his attachment to the labor market. At a hearing held on January 11, 2019, claimant, an undocumented alien who speaks limited English and does not read or write English, testified through an interpreter regarding his employment history since arriving in the United States and his unsuccessful efforts to obtain employment between April and December 2018.[FN1] On January 17, 2019, a Workers' Compensation Law Judge (hereinafter WCLJ) issued a decision finding that claimant had demonstrated a timely, diligent and persistent effort to find a job and awarded him benefits at the partial disability rate for the period of July 31, 2018 to January 11, 2019, and continuing thereafter. The employer and the carrier sought administrative review [FN2] and, by decision filed May 9, 2019, the Workers' Compensation Board found that claimant had failed to produce sufficient evidence at the January 11, 2019 hearing to establish that his job search was timely, diligent and persistent so as to demonstrate a reattachment to the labor market. Accordingly, the Board modified the WCLJ's decision by rescinding the "awards for the period of July 31, 2018 to January 11, 2019, and continuing." Claimant's application for reconsideration and/or full Board review was subsequently denied. Claimant appeals solely from the Board's May 9, 2019 decision.
The sole issue before this Court is whether substantial evidence supports the Board's determination that claimant failed to demonstrate labor market attachment after July 31, 2018. Importantly, "the status of an injured worker as an undocumented alien does not, in and of itself, prohibit an award of workers' compensation benefits" (Matter of Amoah v Mallah Mgt., LLC, 57 AD3d 29, 32 [2008]; cf. New York Hosp. Med. Ctr. of Queens v Microtech Contr. Corp., 22 NY3d 501, 507 n 4 [2014]), unless the worker cannot satisfy statutory requirements (see Matter of Ramroop v Flexo-Craft Print., Inc., 11 NY3d 160, 166-167 [2008]). Likewise, the Board has recognized that an injured worker's undocumented status "does not eliminate his [or her] need to make a reasonable search for work" (Employer: Kandahar Auto, 2009 WL 3192585, *3, 2009 NY Wkr Comp LEXIS 14414, *6 [WCB No. 0025 5773, Sept. 28, 2009]). The determination of whether a claimant has undertaken a reasonable search for work [*2]consistent with physical restrictions "is a factual one that an appellate court must uphold as long as there is substantial evidence to support it" (Matter of Zamora v New York Neurologic Assoc., 19 NY3d 186, 192-193 [2012]; see Matter of Ostrzycki v Air Tech Lab, Inc., 174 AD3d 1255, 1255 [2019]; Matter of Wolfe v Ames Dept. Store, Inc., 159 AD3d 1291, 1293 [2018]). "The Board has found that a claimant remains attached to the labor market when he or she is actively participating in a job location service, a job retraining program or a Board-approved rehabilitation program, or where there is credible documentary evidence that he or she is actively seeking work within his or her medical restrictions through a timely, diligent and persistent independent job search" (Matter of Ostrzycki v Air Tech Lab, Inc., 174 AD3d at 1256 [internal quotation marks and citations omitted]; see Employer: American Axle, 2010 WL 438153, *4—5, 2010 NY Wkr Comp LEXIS 2560, *12 [WCB No. 8030 3659, Feb. 4, 2010]).
The evidence at the hearing established that claimant attended school through the ninth grade in his country of birth and has exclusively worked in construction, both before coming to the United States at age 23 and for the eight years thereafter, until sustaining the subject injuries while performing heavy lifting at the employer's construction site. With respect to his attachment to the labor market, claimant submitted completed forms listing 62 businesses to which he applied for work between April and December 2018 as a prep cook, dishwasher, restaurant helper and ironing worker. He identified potential employers by walking around two boroughs of New York City two or three days per week, seeking work that would not require a Social Security number, which he lacked due to his undocumented status. He applied for both non-construction jobs, for which he lacked experience and language skills, and construction jobs, for which he had limited physical abilities due to his injuries. Potential employers informed claimant that (1) they were not hiring, (2) he lacked the requisite experience or (3) they could not hire him without a Social Security number. Claimant produced documentation establishing that he sought assistance from Workforce1, a job location service, which aided him in the preparation of a work-history rÉsumÉ in English; however, despite his willingness to use this service, Workforce1 ultimately advised him that he was unable to use its services for his job search because he lacked a Social Security number. Claimant registered at an adult learning center in order to take English language courses, but was placed on a wait list and, as of the time of the hearing, had yet to be contacted regarding an opening.
Further, claimant's uncontradicted testimony demonstrated that, throughout the duration of his job search, the injuries to his back caused him "a lot of pain," which he described as "severe" and "almost constant." His treating physicians advised [*3]him that he could not bend or "lift anything heavy," that he should continue with therapy to see if the pain subsides and that he should not work because his condition was "very serious." Although claimant had been classified as temporarily partially disabled, the record lacks any medical records or other evidence reflecting what physical limitations were put on his work abilities between July 2018 and the January 2019 hearing. Ultimately, given that his only job experience was in construction and his inability to perform heavy lifting due to the injuries he sustained while working for the employer, coupled with having limited English-speaking skills and an inability to read and write in English, claimant did not receive any job offers during the relevant time period, despite his efforts.
The Board's reliance on the fact that just over one third of the businesses to which claimant applied had no known publicized openings, or that he applied for positions that did not comport with his physical limitations, does not support its finding that his job search effort lacked good faith. To the contrary, it is clear that claimant's circumstances effectively required that he conduct an in-person, independent job search in an attempt to identify those businesses, just like the employer, that would hire him despite his lack of documentation and with his physical limitations.[FN3] Additionally, the Board's finding that claimant should have "respond[ed] to actual [job] openings" rather than "approaching businesses in person as cold contacts" relies on the unsupported supposition that he had access to or could otherwise read available job postings or that such postings would reflect whether a Social Security number was a prerequisite for hiring. There is nothing in the record, meanwhile, demonstrating that claimant had access to job training or that there was an agency willing and able to assist with his job search or that he had access to a computer, let alone the computer skills necessary, to conduct a job search.
Although we are mindful that the Board "is the sole arbiter of witness credibility" (Matter of Restrepo v Plaza Motors of Brooklyn Inc., 181 AD3d 1108, 1110 [2020] [internal quotation marks and citation omitted]), here, the Board's decision did not hinge on a credibility determination. The Board, like the WCLJ, credited claimant's testimony that he had applied, in person, for 62 positions over a nine-month period. Although the Board has recognized the difficulties associated with documenting such independent, in-person job search efforts, it nevertheless has expressly "encouraged" them (Employer: American Axle, 2010 WL 438153 at *7). A review of claimant's submissions, moreover, demonstrates that he submitted the type of detailed, dated information recommended by the Board to verify such searches, which was then translated into English.
Notably, the Board made no finding that claimant failed to avail himself of retraining, rehabilitation and[*4]/or job-location programs or services that were available to him as an undocumented, injured worker, or that he did not actively and persistently seek work consistent with his medical restrictions so as to support its conclusion that his job search lacked good faith (see Matter of Ostrzycki v Air Tech Lab, Inc., 174 AD3d at 1256). Accordingly, we find that the Board's conclusion that claimant failed to submit evidence of a timely, diligent and persistent job search so as to demonstrate attachment to the labor market is not supported by substantial evidence (cf. id. at 1255-1256; Matter of Wolfe v Ames Dept. Store, Inc., 159 AD3d at 1293). In light of our conclusion, claimant's remaining contentions need not be addressed. We note that claimant's contentions that he was unconstitutionally discriminated against and was industrially disabled were not raised at the hearing or before the Board and, as such, they are unpreserved for our review (see Matter of Duncan v John Wiley & Sons, Inc., 137 AD3d 1430, 1431 [2016]; Matter of Huang Sheng Ku v Dana Alexander, Inc., 12 AD3d 988, 989 [2004]).
Aarons and Colangelo, JJ., concur.
Mulvey, J. (dissenting).
Because substantial evidence supports the Workers' Compensation Board's decision, we dissent. As noted by the majority, the sole issue on appeal is whether substantial evidence supports the Board's determination that claimant failed to demonstrate his attachment to the labor market after July 31, 2018. A claimant bears the burden of demonstrating his or her attachment to the labor market through evidence of a diligent and persistent search for employment within medical restrictions (see Matter of Ostrzycki v Air Tech Lab, Inc., 174 AD3d 1255, 1255 [2019]; Matter of Pravato v Town of Huntington, 144 AD3d 1354, 1356 [2016]; Matter of Cole v Consolidated Edison Co. of N.Y., Inc., 125 AD3d 1084, 1085 [2015]). Although "the status of an injured worker as an undocumented alien does not, in and of itself, prohibit an award of workers' compensation benefits" (Matter of Amoah v Mallah Mgt., LLC, 57 AD3d 29, 32 [2008]; cf. New York Hosp. Med. Ctr. of Queens v Microtech Contr. Corp., 22 NY3d 501, 507 n 4 [2014]), a worker's undocumented status does not relieve him or her of any statutory requirements or "eliminate his [or her] need to make a reasonable search for work" (Employer: Kandahar Auto, 2009 WL 3192585, *3, 2009 NY Wkr Comp LEXIS 14414, *6 [WCB No. 0025 5773, Sept. 28, 2009]; see Matter of Ramroop v Flexo-Craft Print., Inc., 11 NY3d 160, 166-167 [2008]).[FN4] Whether a claimant has undertaken a reasonable and diligent search for work consistent with physical restrictions presents a factual determination that is within the Board's province, and such a determination must be upheld by the courts "as long as there is substantial evidence to support it" (Matter of Zamora v New York Neurologic Assoc., 19 NY3d 186, 192-193 [2012]; see Matter of Ostrzycki v Air Tech Lab, Inc., 174 AD3d at 1255).
The majority [*5]does not hold claimant to his burden. Concluding that claimant was essentially required to conduct his job search by personally going to businesses and asking if they had any positions, the majority finds no support for the Board's finding that claimant's search lacked good faith because 37% of the businesses from which he sought work had no positions available. The majority states that "[t]here is nothing in the record, meanwhile, demonstrating that claimant had access to job training or that there was an agency willing and able to assist with his job search or that he had access to a computer, let alone the computer skills necessary, to conduct a job search" (majority op at 5). But this statement begs the question of who bore the burden of submitting evidence on those topics.
To show his attachment to the labor market, claimant needed to prove his diligent and reasonable search for work. Although claimant testified that Workforce1 assisted him in creating a resume but could not send him to job interviews because he did not have a Social Security number, claimant did not present evidence that no other job training or assistance programs were available to help undocumented aliens seeking work. Instead, he places blame on Workforce1, and the Board itself, for not offering more services to undocumented workers.
Further, if claimant does not have access to a computer or job search websites, he could have provided such testimony. Nevertheless, claimant did not present any evidence that he lacked access to a computer. Indeed, many public libraries offer free computer and Internet access. As for the majority's conclusion that claimant was forced to go door to door looking for work, the record does not demonstrate that claimant — who does not speak or read English well — lacked access to a friend or relative who could assist him by reading English-language classified advertisements in newspapers or online or help-wanted signs in store windows, or that there were no available Spanish-language advertisements or websites for jobs in New York City, a location with a large Spanish-speaking population.
Additionally, claimant's sparse testimony did not clearly explain how he selected the businesses at which he sought work. For example, although it would be logical that he would approach Spanish-speaking businesses, several of the businesses on claimant's list did not hire him based on his lack of English language skills. He did not explain how he obtained his prior employment as an undocumented worker, or whether those channels were still available to him. Claimant's rÉsumÉ notes his previous work in construction and states that his goal is to gain similar employment, but his medical restrictions essentially prohibit him from performing such work. It was unclear why he sought specific types of work, mainly limited to jobs such as working as a prep cook in restaurants or pizzerias or ironing at laundromats. Claimant provided no evidence as to [*6]whether he has any skills gained through avocational or personal experiences that would apply to the job fields in which he was seeking work.
In short, claimant testified that he walked around New York City and stopped at certain businesses to inquire about work, without any apparent plan or explanation as to why these businesses were targeted. More than a third of those businesses had no positions available. Claimant did not attempt to find advertisements for available positions and focus his applications on those businesses. Based on this record evidence, it does not seem unreasonable for the Board to have concluded that "claimant's in-person job search efforts appear to be lacking in good faith" and, accordingly, that he did not establish his reattachment to the labor market. As substantial evidence supports the Board's determination that claimant failed to meet his burden, we would affirm.
Pritzker, J., concurs.
ORDERED that the decision is reversed, with costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1: Claimant conceded that he lacked adequate proof of labor market attachment prior to July 31, 2018.

Footnote 2: In the interim, claimant underwent previously approved spinal surgery on February 22, 2019.

Footnote 3: We note the apt observations of our dissenting colleagues in their footnote. The irony here is that claimant's failure to obtain replacement work was in part due to his inability to provide potential employers with government-issued documentation, which was apparently not an impediment to the employer when it hired claimant in the first place.

Footnote 4: We must acknowledge the absurdity of implicitly endorsing the "legal fiction" that an undocumented alien must perform a diligent job search when the success of such a search would require illegal conduct (Correa v Waymouth Farms, Inc., 664 NW2d 324, 331 [Minn Sup Ct 2003] [Gilbert, J., dissenting]). "Under the [Immigration Reform and Control Act of 1986 (hereinafter IRCA)] regime, it is impossible for an undocumented alien to obtain employment in the United States without some party directly contravening explicit congressional policies. Either the undocumented alien tenders fraudulent identification, which subverts the cornerstone of IRCA's enforcement mechanism, or the employer knowingly hires the undocumented alien in direct contradiction of its IRCA obligations" (Hoffman Plastic Compounds, Inc. v National Labor Relations Bd., 535 US 137, 148-149 [2002]; see 8 USC § 1324a [a] [1]; [g] [3]; § 1324c [a]). The Court of Appeals has noted "the tension between the . . . objective to return an injured worker to the marketplace, and the reemployment of a worker, as in this case, who is not authorized to so participate in the first instance" (Matter of Ramroop v Flexo-Craft Print., Inc., 11 NY3d 160, 167 [2008]). Yet that Court noted that failing to require undocumented aliens to conduct a diligent job search "would effectively place the instant claimant, and others similarly situated, in a more favorable position than claimants who must meet all statutory requirements" (id.; see Correa v Waymouth Farms, Inc., 664 NW2d at 332 [Gilbert, J., dissenting]). In any event, the Legislature is the proper entity to resolve any policy questions regarding the propriety of requiring undocumented workers to conduct diligent job searches to obtain workers' compensation benefits for partial disabilities (see Correa v Waymouth Farms, Inc., 664 NW2d at 331).