■ BRUCE GRILIKHES, Appellant, v INTERNATIONAL TILE & STONE SHOW EXPOS et al., Respondents, et al., Defendant. [934 NYS2d 384]—

Defendant International Tile & Stone Show, Inc. (ITSS) was the producer of a trade show at the Javits Center. ITSS's right to operate the show derived from a license agreement between it and the New York Convention Center Operating Corporation (NYCCOC), the operator of Javits. The license agreement provided that "[NYCCOC] hereby gives to [ITSS] a License to use the facilities described in paragraph 3 (the 'Space') and a right of passage to the Space, through the outdoor areas maintained by the Center, through the loading dock, and through the entrance and lobby of the Center for the sole purposes of conducting (the 'Event') to be called INTERNA-TIONAL TILE & STONE SHOW." It further provided that ITSS "shall have no right, title, estate or interest in the Center, its facilities or equipment." The agreement also required ITSS to clean up the space after the event. In paragraph 31, ITSS "assume[d] full responsibility for all acts or omissions of contractors . . . and vendors" and agreed to "insure that all such persons fully compl[ied] with [NYCCOC]'s Work Rules." Those rules stated that "[c]ontractor and exhibitor must hire Javits labor to perform" all work involved in the erection and dismantling of exhibits, displays, backgrounds and booths. ITSS chose defendant Metropolitan Exposition Services, Inc. (MES) from an approved list of contractors.

Plaintiff was a union carpenter who worked at the Javits Center and was injured while dismantling one of the exhibit booths. His paycheck was issued by NYCCOC. In addition, the workers' compensation benefits that plaintiff began to receive after the subject accident were paid by NYCCOC. Plaintiff testified at his deposition that, during the exhibition in question, including on the day of his accident, he signed in at an NYCCOC desk and was then sent to an MES desk, to sign in there as well. MES gave plaintiff a list of tasks to complete each day and supplied him with all necessary work materials, including safety equipment. According to his testimony, plaintiff considered MES his supervisor during the tile show.

A representative of MES similarly testified that MES regarded

plaintiff as under its supervision and control. The representative stated that "every single one of those [union] employees [was] ours to do whatever we want with in terms of, we decide how many hours they're going to work, what section they're going to work in." If MES was dissatisfied with a particular worker, it was entitled to instruct NYCCOC not to send that worker back to work on the show. ITSS's two former owners testified that ITSS did not play any role in the setup or breakdown of the exhibits. ITSS did not hire or direct workers or have any control over how the workers performed their work. It had no say in the manner in which the temporary exhibit booths were set up or taken down. The former owners also testified that ITSS had no responsibility for ensuring the safety of the workers.

Plaintiff commenced this action against MES and ITSS alleging common-law negligence and violations of Labor Law §§ 200, 240 (1) and § 241 (6). MES moved for summary judgment dismissing the complaint on the ground that plaintiff was its special employee and therefore his claim was barred by Workers' Compensation Law § 29 (6). ITSS also moved for summary judgment, on the ground that it was neither an owner nor a contractor and therefore could not be held liable. The court granted both motions. It found that MES was plaintiff's employer for workers' compensation purposes since it told him what to do, and when and where to do it, and because there was no evidence that NYCCOC retained any control over plaintiff once he left the NYCCOC sign-in desk in the morning. As for ITSS, the court stated that "the Revised Agreement entered into between NYCCOC and ITSS for a period of ten days was a license, not a lease, which did not endow ITSS with an interest in the Javits Center such that ITSS could be considered an 'owner' within the intendment of the Labor Law." Plaintiff does not challenge the dismissal of his common-law negligence and Labor Law §§ 200 and 240 (1) causes of action.

A worker may be deemed a special employee where he or she is "transferred for a limited time of whatever duration to the service of another" (see Thompson v Grumman Aerospace Corp., 78 NY2d 553, 557 [1991]). While the mere transfer does not compel the conclusion that a special employment relationship exists, a court is most likely to find that it does where the transferee "controls and directs the manner, details and ultimate result of the employee's work" (id. at 558). It is undisputed that MES directed and supervised plaintiff in the tasks he was to perform and the manner in which he was to perform them, and that it furnished his work equipment. More-

over, plaintiff's work was exclusively for the furtherance of MES's business of building the trade show, and MES had the authority to request and reject particular employees. Thus, the record establishes, as a matter of law, that MES was plaintiff's special employer, and that therefore plaintiff's Labor Law § 241 (6) claim against it is barred by the Workers' Compensation Law.

We agree with plaintiff that, contrary to the motion court's findings, it is irrelevant what type of interest ITSS had in the real property comprising the Javits Center. Whether ITSS was a lessee, a licensee or a permittee, it could be considered an owner for purposes of the Labor Law if it had the ability to control the work site. "[T]he key criterion is the right to insist that proper safety practices were followed" (*Bart v Universal Pictures*, 277 AD2d 4, 5 [2000] [internal quotation marks omitted]). However, all of the deposition testimony indicates that ITSS had no authority over plaintiff or any other worker and that MES was exclusively in control of safety and the manner in which the work was performed.

Further, nothing in the license agreement itself authorized ITSS to supervise the MES workers or charged it with overseeing safety. Plaintiff argues that paragraph 31 of the license agreement placed ITSS in the position of an owner by providing that ITSS "assumes full responsibility for all acts and omissions of contractors" and will "insure that all such [contractors] fully comply with [NYCCOC]'s Work Rules." However, the Work Rules themselves direct both contractor and exhibitor to hire Javits labor. It can thus be deduced that paragraph 31 refers to contractors hired by ITSS for purposes other than the erecting and dismantling of exhibit space. The provision merely ensures that if any such contractors needed construction work performed within the space they would hire approved union workers such as those utilized by MES.

This case stands in contrast to *Bart v Universal Pictures*, (277 AD2d 4, 5-6 [2000], *supra*), where the defendant, a permittee, was deemed an owner because it "was contractually charged with the right and the obligation to control the work site, and the responsibility of ensuring that the work contemplated by the permit was performed in a safe and proper manner." Because ITSS had no such authority, it cannot be deemed an owner for purposes of Labor Law liability. Accordingly, its motion for summary judgment dismissing the section 241 (6) claim was properly granted. Concur—Mazzarelli, J.P., Catterson, DeGrasse, Abdus-Salaam and Román, JJ.