[5 NE3d 993, 982 NYS2d 830]

New York Hospital Medical Center of Queens, Appellant, v
Microtech Contracting Corp., Respondent.

Argued January 6, 2014; decided February 13, 2014

**POINTS OF COUNSEL**

*Mauro Lilling Naparty LLP*, Woodbury (*Timothy J. O'Shaughnessy* and *Matthew W. Naparty* of counsel), for appellant. The order of the Appellate Division should be reversed and Microtech Contracting Corp.'s motion denied because Microtech's motion was based entirely on an illegal contract. (*Riggs v Palmer*, 115 NY 506; *Manning v Brown*, 91 NY2d 116; *Balbuena v IDR Realty LLC*, 6 NY3d 338; *Carmine v Murphy*, 285 NY 413; *International Spangles Corp. v Marrow Mfg. Corp.*, 294 NY 295; *Stone v Freeman*, 298 NY 268; *Spivak v Sachs*, 16 NY2d 163; *El Gemayel v Seaman*, 72 NY2d 701; *Richards Conditioning Corp. v Oleet*, 21 NY2d 895; *Morgan Munitions Supply Co. v Studebaker Corp. of Am.*, 226 NY 94.)

*Wade Clark Mulcahy*, New York City (*Dennis M. Wade* and *Cheryl D. Fuchs* of counsel), for respondent. I. It is not the role of the judiciary to read an exception into the Workers' Compensation Law when the legislature has clearly spoken as evidenced by the clear wording of the statute. (*Matter of Ramroop v Flexo-Craft Print., Inc.*, 11 NY3d 160; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *People v Friedman*, 302 NY 75; *Morales v County of Nassau*, 94 NY2d 218; *Lawrence Constr. Corp. v State of New York*, 293 NY 634.) II. The New York

Hospital Medical Center of Queens' claim is barred by the Workers' Compensation Law because the language of the law is unambiguous and does not contain an exception where the employee is an illegal immigrant. III. This Court has already ruled that the Workers' Compensation Law applies where the employee is an illegal immigrant. (*Matter of Ramroop v Flexo-Craft Print., Inc.*, 11 NY3d 160; *Matter of Testa v Sorrento Rest.*, 10 AD2d 133, 8 NY2d 705; *Matter of Post v Burger & Gohlke*, 216 NY 544; *Coque v Wildflower Estates Devs., Inc.*, 31 AD3d 484; *Balbuena v IDR Realty LLC*, 6 NY3d 338; *Matter of Amoah v Mallah Mgt., LLC*, 57 AD3d 29.) IV. The workers' compensation bar applies even if the employment is "illegal," and an alleged violation of immigration law does not defeat the application of Workers' Compensation Law § 11. (*Noreen v Vogel & Bros.*, 231 NY 317; *Decker v Pouvailsmith Corp.*, 207 App Div 853; *Matter of Blanchard v Integrated Food Sys.*, 220 AD2d 895; *Martinkowski v Carborundum Co./Electro-Min. Div.*, 108 Misc 2d 184.) V. Courts apply the workers' compensation bar even where the employer violates federal law. (*Lloyd Capital Corp. v Pat Henchar, Inc.*, 80 NY2d 124; *Rosasco Creameries, Inc. v Cohen*, 276 NY 274; *Charlebois v Weller Assoc.*, 72 NY2d 587; *Balbuena v IDR Realty LLC*, 6 NY3d 338; *Matter of Amoah v Mallah Mgt., LLC*, 57 AD3d 29; *De Canas v Bica*, 424 US 351.) VI. The New York Hospital Medical Center of Queens' argument is premised on an "illegal" contract. However, the Workers' Compensation Law applies even without a contract. Microtech Contracting Corp. is not asking this Court to enforce a contract, let alone an illegal one. (*Thompson v Grumman Aerospace Corp.*, 78 NY2d 553; *Vanderwerff v Victoria Home*, 299 AD2d 345; *Spivak v Sachs*, 16 NY2d 163; *McConnell v Commonwealth Pictures Corp.*, 7 NY2d 465; *International Spangles Corp. v Marrow Mfg. Corp.*, 294 NY 295; *Carmine v Murphy*, 285 NY 413; *Richards Conditioning Corp. v Oleet*, 21 NY2d 895; *Reiner v North Am. Newspaper Alliance*, 259 NY 250; *Sprung v Jaffe*, 3 NY2d 539; *Matter of Clarke v Town of Russia*, 283 NY 272.) VII. No public policy reason exists to support a rewriting of the Workers' Compensation Law. (*Morales v County of Nassau*, 94 NY2d 218; *Matter of Sackolwitz v Hamburg & Co.*, 295 NY 264; *People v Friedman*, 302 NY 75; *Lloyd Capital Corp. v Pat Henchar, Inc.*, 80 NY2d 124; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *Morales v Gross*, 230 AD2d 7.) VIII. The New York Hospital Medical Center of Queens rightly abandons its argument that the Workers' Compensation Law is preempted by the Immigration Reform and Control Act (IRCA) because

this Court has already ruled that IRCA does not preempt state law. (*Matter of Ramroop v Flexo-Craft Print., Inc.*, 11 NY3d 160; *Matter of Amoah v Mallah Mgt., LLC*, 57 AD3d 29; *Balbuena v IDR Realty LLC*, 6 NY3d 338; *Madeira v Affordable Hous. Found., Inc.*, 469 F3d 219.)

## OPINION OF THE COURT

READ, J.

In *Balbuena v IDR Realty LLC* (6 NY3d 338, 363 [2006]), we held that an injured employee's status as an undocumented alien does not preclude recovery of lost wages in a personal injury action against a landowner under the State's Labor Law. This appeal asks us to look at the other side of the coin and decide if an employer's statutory rights under the Workers' Compensation Law are extinguished merely because its injured employee is an undocumented alien; specifically, whether the employer may still invoke section 11's shield against third-party claims for common-law contribution and indemnification. We conclude that, under the facts and circumstances presented by this case, the employees' immigration status does not affect the employer's rights under Workers' Compensation Law § 11, and therefore affirm the Appellate Division.

## I

In early 2008, plaintiff New York Hospital Medical Center (the hospital) engaged defendant Microtech Contracting (Microtech) to undertake demolition in a basement room housing an incinerator at the hospital's location in Flushing, Queens. On March 6, 2008, a Microtech "supervisor" met with brothers Luis and Gerardo Lema, and hired them to perform this work. The Lemas, originally from Ecuador, were undocumented aliens not legally employable in the United States.

After the men reached the worksite, the Microtech employee supplied the Lemas with a sledge hammer and a chipping gun (essentially a small jackhammer) and explained what they were supposed to do. The Lemas first broke apart and removed a cement platform and then began taking down a metal wall. The vibrations created by use of the tools given them evidently dislodged a metal chimney or flue attached to the wall between 11 and 20 feet above the floor. The chimney toppled, and struck and injured them both.

The brothers made claims for and received workers' compensation benefits, which Microtech's insurance carrier paid. Additionally, by complaint dated August 8, 2008, the Lemas sued the hospital for violations of the Labor Law. This is exactly the kind of lawsuit that *Balbuena* permits to go forward, at least absent proof that the undocumented alien tendered false work authorization documents to gain employment (*see Balbuena*, 6 NY3d at 363). In a decision dated November 19, 2010, Supreme Court granted the Lemas summary judgment on liability on their causes of action grounded in Labor Law §§ 240 (1) and 241 (6). According to the hospital's attorney, the parties entered into a high-low agreement at the ensuing damages trial, and after the verdict, the judgment was paid in keeping with this arrangement.

Meanwhile, by summons and complaint dated September 20, 2010, the hospital brought this action for common-law and contractual contribution and indemnification against Microtech to recover any damages it incurred in the Labor Law litigation with the Lemas. The hospital alleged that Microtech was performing the work on March 6, 2008 pursuant to an agreement and/or contract with it; that Microtech breached this contract and/or agreement and violated the Immigration Reform and Control Act (8 USC § 1324a) (IRCA) when it hired the Lemas;[1] that the Lemas were injured solely on account of Microtech's negligence; and that Workers' Compensation Law § 11 did not preclude its lawsuit against Microtech. Section 11 bars third-party lawsuits for contribution and indemnification against an injured employee's employer unless the employee suffered a "grave injury," limited to death and the exclusive list of disabilities defined in the statute, or the employer agreed to contribution and indemnification in a written contract entered into with the third party prior to the accident.[2]

---

**1.** IRCA makes it unlawful for a person or entity to hire an unauthorized alien for employment in the United States, either knowingly or without complying with the statute's verification requirements (*see* 8 USC § 1324a [a] [1] [A], [B]; *see generally Balbuena*, 6 NY3d at 353-354).

**2.** Specifically, section 11 states that

"[t]he liability of an employer [to pay workers' compensation benefits] shall be exclusive and in place of any other liability whatsoever, to such employee, his or her personal representatives, spouse, parents, dependents, distributees, or any person otherwise entitled to recover damages, contribution or indemnity, at common law or otherwise, on account of such injury or death or liability arising therefrom . . . ."

In lieu of answering, Microtech moved on November 24, 2010 to dismiss the hospital's complaint on the grounds of documentary evidence and failure to state a cause of action (*see* CPLR 3211 [a] [1], [7]). Microtech took the position that section 11 barred the hospital's action because documentary evidence (the bill of particulars in the underlying personal injury lawsuit and an unsigned purchase order postdating the accident) showed that the Lemas did not suffer a grave injury and that Microtech did not enter into the requisite written contract providing for contribution or indemnification.[3] And without proof of a grave injury or contractual contribution or indemnification, Microtech argued, the hospital did not state a claim. Moreover, Microtech contended, noncompliance with IRCA (which it disputed) would not deprive it of the protection of section 11 since the Workers' Compensation Law applies to all workers within the state's borders regardless of their immigration status.

Solely for purposes of responding to Microtech's motion, the hospital did not argue that the Lemas suffered grave injuries or that Microtech had agreed in writing to contribution or indemnification. Moreover, the hospital stressed that its claim did not affect the relationship between Microtech and its employees, the Lemas. The hospital insisted, however, that Microtech should not be allowed to "hid[e] behind the language of

---

"For purposes of this section the terms 'indemnity' and 'contribution' shall not include a claim or cause of action for contribution or indemnification based upon a provision in a written contract entered into prior to the accident or occurrence by which the employer had expressly agreed to contribution to or indemnification of the claimant or person asserting the cause of action for the type of loss suffered.

"An employer shall not be liable for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of his or her employment for such employer unless such third person proves through competent medical evidence that such employee has sustained a 'grave injury' which shall mean only one or more of the following: death, permanent and total loss of use or amputation of an arm, leg, hand or foot, loss of multiple fingers, loss of multiple toes, paraplegia or quadriplegia, total and permanent blindness, total and permanent deafness, loss of nose, loss of ear, permanent and severe facial disfigurement, loss of an index finger or an acquired injury to the brain caused by an external physical force resulting in permanent total disability."

**3.** Microtech conceded receipt of this purchase order solely for purposes of its motion to dismiss.

Workers' Compensation Law § 11 after violating a federal statute" since "New York courts have long held that they will not award a plaintiff the benefit of an illegal bargain."

On August 15, 2011, Supreme Court granted Microtech's motion to dismiss on the ground that the complaint did not state a cause of action. The judge reasoned that "[t]he exceptions to [section 11's] bar of claims for indemnity and contribution (against an employer providing Workers' Compensation benefits such as Microtech) do not include the circumstance accepted as true herein for purposes of this motion—essentially, that Microtech employed unauthorized aliens who were injured on the job." (2011 NY Slip Op 33671[U], *3-4 [2011].) The hospital appealed.

In the Appellate Division, the hospital again protested that Microtech may not "profit" from its violation of IRCA. Additionally, the hospital more clearly argued conflict preemption—i.e., that permitting an employer who knowingly hires undocumented workers to enjoy the tort immunity conferred by section 11 conflicts with IRCA's goal to discourage illegal immigration by decreasing employment opportunities for undocumented workers. Microtech made three responses. First, Microtech argued that section 11 barred the hospital's claim, as stated by Supreme Court. Next, Microtech countered that whereas hiring an undocumented worker knowingly or without verifying employment eligibility is unlawful and exposes an employer to penalties under IRCA, this circumstance does not make IRCA "conflict [with], contradict or supersede" New York's Workers' Compensation Law. According to Microtech, since it is well settled that the Workers' Compensation Law applies to undocumented aliens,[4] the statute logically also covers the employer who hires undocumented workers. Finally, Microtech asserted

---

4. We have actually never addressed the precise question of whether, or under what circumstances, IRCA may preempt the Workers' Compensation Law. *Balbuena* dealt with alleged violations of the State's Labor Law. In support of our holding in *Balbuena*, we simply noted that courts in other states have held workers' compensation statutes, which like the State's Labor Law are intended to protect workers, to be "applicable to all persons within the state's borders, even those who are not entitled to be here" (*Balbuena*, 6 NY3d at 359 n 6). In *Matter of Ramroop v Flexo-Craft Print., Inc.* (11 NY3d 160 [2008]), as in this case, the parties did not dispute that an injured employee was entitled to workers' compensation benefits. As a result, the only issue before us in *Ramroop* was whether the employee's status as an undocumented worker prevented him from recovering "additional compensation" pursuant to Workers' Compensation Law § 15 (3) (v), and we held that it did.

that it did not "profit" from the alleged IRCA violation because it paid premiums to its insurance carrier to obtain medical care and compensation benefits for its employees, including the Lemas.

The Appellate Division unanimously affirmed (98 AD3d 1096 [2d Dept 2012]). Citing repeatedly to *Balbuena*, the court acknowledged that "precluding [Microtech] from receiving the protections provided by Workers' Compensation Law § 11 for its violations of the IRCA [might] support [that statute's] ultimate goals . . . by punishing [Microtech] for failing to verify the [Lemas'] immigration status" (*id.* at 1100). Nonetheless, the court opined, "affording [Microtech] the economic protections of Workers' Compensation Law § 11 . . . would not stand as an obstacle to the accomplishment or execution of the full purposes and objectives of Congress such that Workers' Compensation Law § 11 should be considered preempted" (*id.* [internal quotation marks omitted]). Further, to rule in the hospital's favor would "effectively deny [Microtech] the economic protections it acquired under the Workers' Compensation Law in return for providing [the Lemas] with compensation for their injuries," as well as "relieve [the hospital] of its responsibility to ensure a safe construction site for workers under the Labor Law" (*id.*). Accordingly, the Appellate Division held that the IRCA violations alleged did not abrogate the protection from third-party claims afforded to Microtech by section 11. By decision and order dated March 13, 2013, the Appellate Division denied the hospital's motion to reargue, and instead granted leave to appeal to us and certified the following question, "Was the decision and order of [the Appellate Division] properly made?"

## II

In the lower courts the parties contested whether IRCA preempts section 11's shield against third-party claims for common-law contribution and indemnification, and the Appellate Division's decision turned on its disposition of this issue. Before us, however, the hospital has chosen not to assert conflict preemption. Rather, as stated in its brief,

By contrast, the Appellate Division has explicitly held that IRCA does not preclude an injured worker who is an undocumented alien from collecting workers' compensation benefits, even if the employee used fraudulent paperwork to obtain the work (*see Matter of Amoah v Mallah Mgt., LLC*, 57 AD3d 29 [3d Dept 2008]).

"the Hospital argues only that the employment contracts between Microtech and the Lemas were illegal contracts that are unenforceable in New York Courts. Thus, Microtech may not defend this case on the ground that the Lemas were its employees and therefore the action is barred by section 11 of the WCL. Microtech violated federal law when it hired the Lemas without asking for any documentation showing they were authorized to work in the United States."[5]

It is true that New York courts typically do not assist parties in taking advantage of their own wrongs (*see e.g. Manning v Brown*, 91 NY2d 116 [1997]; *Riggs v Palmer*, 115 NY 506, 511 [1889]), or enforce illegal contracts (*Spivak v Sachs*, 16 NY2d 163 [1965]; *Stone v Freeman*, 298 NY 268 [1948]). But these principles are beside the point in this case: we are not being called upon to enforce or recognize rights arising from an illegal oral employment contract between Microtech and the Lemas, and Microtech is not raising any such employment contract as a defense to common-law contribution or indemnification. Indeed, section 11 does not even require an underlying employment contract (*see* Workers' Compensation Law § 201 [in defining the terms "employee" and "employment" for the purposes of the Workers' Compensation Law, the existence of a contract is not a requirement]). Instead, we are being asked to apply the statute to the facts presented.

In any event, we essentially rejected the hospital's argument in *Balbuena*, where the dissent (citing many of the same cases relied upon by the hospital) would have denied recovery to the plaintiffs in their state Labor Law lawsuits on the ground that "the courts will not aid in achieving the purpose of an illegal transaction" (*Balbuena*, 6 NY3d at 363, 363-368 [Smith, J., dissenting]). If the illegality of the employment contract does not defeat the employee's rights under an otherwise applicable state statute, as was the case in *Balbuena*, it is not clear why it would nonetheless annul the employer's statutory rights.

Under New York's workers' compensation scheme, an employee receives medical benefits and compensation for workplace injuries, regardless of fault, paid for by the employer. In

---

**5.** In its reply brief, the hospital reemphasizes its stance that "because Microtech violated federal law when it hired the Lema brothers, the employment contract between Microtech and the Lemas cannot be enforced in Court and thus Microtech may not raise it as a defense to the hospital's action for indemnification and/or contribution."

exchange for this certain and swift remedy, the employee gives up the right to sue the employer for personal injuries. Over time, however, this trade-off was seriously compromised by our decision in *Dole v Dow Chem. Co.* (30 NY2d 143 [1972]). *Dole* allowed "a primary defendant in an action [to] seek unlimited contribution or indemnification from an employer as a third party . . . although a direct action against the employer would be barred by the exclusivity provisions of the workers' compensation system" (Governor's Approval Mem, Bill Jacket, L 1996, ch 635 at 54-55, 1996 NY Legis Ann at 459-460). As amended by the legislature in 1996, then, section 11 now explicitly limits an employer's exposure to third-party liability to those situations where the employee suffers a grave injury, or the employer enters into a written contract of contribution or indemnification with the third party (*id.* at 55, at 460). As this case is presented to us, the Lemas did not suffer grave injuries, there was no preexisting agreement for contractual contribution or indemnification and the hospital does not contend that IRCA preempts section 11; therefore, Microtech is entitled to the safe harbor in section 11.

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question not answered upon the ground that it is unnecessary.

Chief Judge LIPPMAN and Judges GRAFFEO, SMITH, PIGOTT, RIVERA and ABDUS-SALAAM concur.

Order affirmed, with costs, and certified question not answered upon the ground that it is unnecessary.