Macropoulos v City of New York (2024 NY Slip Op 50899(U))

[*1]

Macropoulos v City of New York

2024 NY Slip Op 50899(U)

Decided on July 11, 2024

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 11, 2024
Supreme Court, New York County

John Macropoulos, Plaintiff,

against
The City of New York, NEW YORK CITY DEPARTMENT OF TRANSPORTATION, THE NEW YORK CITY DEPARTMENT OF ENVIRONMENTAL PROTECTION, CONSOLIDATED EDISON INC., TURNER CONSTRUCTION COMPANY, COMMODORE CONSTRUCTION CORP., Defendant.
CONSOLIDATED EDISON INC., Plaintiff,
against
TRIUMPH CONSTRUCTION CORP., SAFEWAY CONSTRUCTION ENTERPRISES, INC., CITYWIDE PAVING INC., Defendant.

Index No. 451904/2017

Brian J. Isaac and Steven Bournazos of Bournazos & Matarangas, PLLC for plaintiff
Corporation counsel by Aneta Sudol for the City of New York
Roxana E. Barsalona for Con Edison (in house counsel)
Mary C. Arnold of Cozen O'Connor and Jessica Erickson for Turner Construction Company
Daniel El Arnaouty of Tyson & Mendes, LLP for Commodore Construction Company

Hasa A. Kingo, J.

The following e-filed documents, listed by NYSCEF document number (Motion 004) 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264, 265, 266, 267, 268, 269, 270, 271, 286, 287, 288, 289, 293, 294, 295, 296, 297, 298, 299, 300, 301, 302, 306, 307, 321 were read on this motion to/for JUDGMENT - SUMMARY.
The following e-filed documents, listed by NYSCEF document number (Motion 006) 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 272, 273, 276, 277, 278, 279, 280, 281, 282, 283, 284, 285, 290, 303, 304, 305, 320 were read on this motion to/for SUMMARY JUDGMENT(AFTER JOINDER.
The following e-filed documents, listed by NYSCEF document number (Motion 007) 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 274, 275, 319 were read on this motion to/for SUMMARY JUDGMENT(AFTER JOINDER.
The following e-filed documents, listed by NYSCEF document number (Motion 009) 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 318, 322, 323, 324, 325, 326, 327 were read on this motion to/for AMEND CAPTION/PLEADINGS.
Upon the foregoing documents, defendant Consolidated Edison ("Con Edison") moves, pursuant to CPLR § 3212, for summary judgment to dismiss all claims and cross-claims asserted against it, and defendant Turner Construction Company ("Turner") cross-claims for an order compelling Con Edison to produce an additional witness for deposition (Motion Seq. 004). Turner also moves for summary judgment to dismiss all claims and cross-claims against it, and Plaintiff cross-moves for summary judgment against Turner and/or defendant Commodore Construction Corp. ("Commodore") on the issue of liability under Labor Law §§ 240, 241(6), 200, and common law negligence (Motion Seq. 006). Commodore separately moves for summary judgment to dismiss Turner's third-party claims for common law indemnification and contribution (Motion Seq. 007). Finally, plaintiff John Macropoulos ("Plaintiff") moves for leave to file an amended complaint (Motion Seq. 009). The motions are consolidated for [*2]decision herein. For the reasons cited herein, Motion Seq. 004 is granted, and the cross-motion is denied. Motion Seq. 006 and the cross-motion thereto are both granted in part. Motion seqs. 007 and 009 are granted.
RELEVANT BACKGROUND
In this personal injury action, Plaintiff seeks damages for a work-related injury that occurred on July 25, 2015, at a worksite located at the intersection of Maiden Lane and William Street, near the New York Federal Reserve Bank ("FRB") located at 33 Liberty Street, New York, New York. At all relevant times, Turner acted as general contractor at the worksite, which included excavation and repair of certain electrical and data conduits that provided power and data to the guard booth from the FRB (NYSCEF Doc No. 193, Nunez 8/19/22 deposition tr at 12). Turner subcontracted with Commodore to excavate the conduits (id. at 14). Plaintiff was employed by Commodore as a laborer at the worksite (NYSCEF Doc No. 187, plaintiff 8/29/18 deposition tr at 22).
On July 25, 2015, Plaintiff was engaged in excavating the electrical and data conduits when he was electrocuted by additional energized conduits that were situated underneath the conduits he was excavating (id. at 38). Plaintiff was deposed on August 29, 2018 regarding the incident and again on May 31, 2022 regarding his injuries (NYSCEF Doc Nos. 187, 188). Plaintiff testified that on the date of the incident, he attended a morning meeting of Commodore employees at the worksite led by a Commodore supervisor, John Vlahopoulos, where there was a discussion of "safety equipment, goggles, boots, stay hydrated" (NYSCEF Doc Nos. 187, plaintiff 8/29/18 deposition tr at 29-30). Following, or at, the meeting Commodore provided him with a jackhammer and protective equipment including gloves, hearing protection, and eye protection (id. at 30-31). There was also discussion at the meeting regarding "excavating and how deep to go," which was "maybe two feet" deep above where the damaged conduits were located (id. at 34-35). Plaintiff was provided with blueprints that showcased the conduits (id.). He could not recall the number of conduits that were on the blueprint but testified "I think it was two conduits" (id.).
Plaintiff was then taken to the excavation site, which was a paved portion of the road (id. at 36). Plaintiff testified that before he broke ground, there were only traffic markings on the asphalt and no Code 753 markings (id. at 130-131) or other mark-outs (NYSCEF Doc No. 188, plaintiff 5/31/22 deposition tr at 141).[FN1]
Plaintiff testified that his understanding regarding mark-outs is that "if there is work to be done in an area digging is involved, a company will come in and mark-out where the utilities are running down so you don't hit them" (id. at 142).
Asked to explain how the accident occurred, Plaintiff testified as follows:
I exposed the conduits. I called over to the super, the foreman who called Turner's foreman, I guess he was. They took a look, told me I had to clean it up a little more. I [*3]continued to clean up the site. I had found some conduits that were broken. And I brought it to their attention. They told me I had to dig underneath the conduits and remove the concrete. I didn't want to dig any further with the jackhammer because I didn't feel it was safe. So they supplied me with a chipping hammer and told me to keep digging and do a better job of it. The next thing I remember was a fireball.
(NYSCEF Doc Nos. 187, plaintiff 8/29/18 deposition tr at 38).
Plaintiff testified that the individual he believed to be Turner's foreman was named "Victor," who was accompanied by Turner's electrician, whose name Plaintiff did not recall (id. at 38-39). Plaintiff's supervisor introduced both individuals to him (id. at 39). When questioned "[w]ho exactly told you that you had to sort of dig under the conduits and remove the concrete," Plaintiff responded "Turner's foreman and also my supervisor. He stated that Turner was running the show" (id. at 39).
Plaintiff further testified that he believed it was unsafe to continue drilling with the jackhammer because he "found another set of conduits close to the ones we were excavating. And they were rusted. I believe one was broken" (id. at 39-40). Plaintiff pointed these out "[t]o both my supervisor, foreman, to Turner, and to another Commodore employee named Ray Speckman" (id. at 40). Commodore then provided him with the chipping hammer, which he used for about 20 minutes before the accident (id. at 41). Plaintiff then heard an explosion, and the next thing he remembers was being in an ambulance (id. at 42). Plaintiff also testified that just prior to the accident, he "had spoken to my super and Turner's guy. I told them that I did not want to continue with the jackhammer. I felt it wasn't safe" (id. at 61). Plaintiff testified that Victor came to talk to him directly regarding the conduits after they were exposed (id. at 88, ln 4-6). Finally, Plaintiff testified that no one told him prior to working at the site that there was electricity running through the conduits (id. at 85), and that neither his foreman or anyone from Turner or Commodore told him to stop working at any point before the accident occurred (NYSCEF Doc No. 188, Plaintiff 5/31/22 deposition tr at 155).
Plaintiff was working alongside "about ten" Commodore employees on the date of the incident (NYSCEF Doc Nos. 187, plaintiff 8/29/18 deposition tr at 37), including Victor G. Starostiak ("Starostiak"). Starostiak was deposed on November 18, 2022 (NSYCEF Doc No. 194, Starostiak deposition tr). Starostiak was also employed by Commodore as a laborer on the date of the accident (id. at 9). He was tasked with cleaning debris from the excavation and assisting anyone who needed help at the time, such as if they needed a break he would "jump in and chip" (id. at 16). At some point during the day, he began working alongside Plaintiff (id. at 18). He testified that Turner initially came up to them and told them to expose the conduits, and after they did so, "[w]e waited and then the guy from Turner came over and asked can we go a little deeper" (id. at 19). After Plaintiff began using the chipping gun, Starostiak saw "a very large spark arch that occurred in the hole with him," and Starostiak shoveled dirt over the fire to put it out (id. at 22). When asked, "[p]rior to the incident occurring did you ever hear of anyone from Turner tell anyone from Commodore to stop the work," Starostiak responded "Never" and "No, never" (id. at 24).
A deposition of Victor Nunez ("Nunez") was taken over two days on August 19, 2022 and September 15, 2022 (NYSCEF Doc Nos. 133-134, Nunez deposition tr). Nunez testified that he is currently employed as a business development manager for Turner and was employed by Turner as an assistant superintendent on July 25, 2015 (id. at 10). In connection with the FRB job, his responsibilities included coordination of the project, meeting with FRB to provide [*4]progress updates, coordinating internally at Turner regarding costs, and he was "in the field coordinating the work amongst the multiple trade partners as well as with the project managers of the companies" (id. at 11). Regarding the conduit repair work at the FRB, he testified as follows:
From what I can recall, a few years prior to our project coming underway Con Edison was doing some street work at the street intersection and they actually cut through, for whatever reason, some of the conduit that fed into the Federal Reserve Bank, essentially two conduits that linked power and data to the guard booth from the Federal Reserve Bank. The Federal Reserve Bank needed repairs done to that because it was critical to their operations to make sure that any deliveries were checked out and they had a working fully functional guard booth.
(id. at 12).
Nunez was on the worksite on July 25, 2015 (id.). His responsibilities included coordinating with the FRB and the field foreman of the trade partners, including Commodore regarding excavation work and with an electrical coordinator whose name he could not recall, and to "coordinate the work and the sequence of the work, and make sure that we have the proper street closures that day before we can effectively start the work as well" (id. at 14). The goal of the day on July 25, 2015 was to do street closures and begin excavation work to expose conduits that needed repair at two locations at the worksite (id. at 15-16; NYSCEF Doc No. 134, Nunez deposition tr at 8).
Nunez testified that, prior to beginning work on the project, likely in June 2015, Turner had a meeting with representatives from Con Edison and the Department of Transportation to discuss road closures and permits needed for the project (NYSCEF Doc No. 134, Nunez deposition tr at 93, 97). Tony Garito from Commodore and an expeditor for Commodore were also present at the meeting (id. at 109). Nunez testified that at the meeting, Turner was told that two Con Edison conduits were "close" to the FRB conduits, but that "we weren't, well we shouldn't have expected them to be right on top of each other" (id. at 106-107). Nunez further testified that "[w]e knew it was live before that and it was asked at that meeting if they could be turned of[f]" (id. at 109). The response to this inquiry was "No, they could not turn them off" (id. at 109). Nunez later clarified that Turner asked FRB if the lines could be de-energized, and FRB, in turn, asked Con Edison (id. at 137).
At the deposition, Nunez was shown a copy of a meeting sign-in dated June 30, 2015 and bates stamped 324 (id. at 123-124). The sign-in sheet shows individuals from the DOT, Turner, FRB, and Commodore signed into the meeting (id. at 125). No individuals from Con Edison are listed on the sign-in sheet, but a bullet point in the meeting minutes says "Turner Construction to start 7/25/15 pending Con Ed meeting" (id.). Nunez testified that he believed "there were still prior Con Ed meetings" (id. at 125-126).
Regarding the date of the incident, Nunez testified that he did not recall if Commodore or Plaintiff voiced concerns about what was located after they began digging in a particular location, did not recall whether he or one of Turner's trade partners wanted them to continue to expose the conduits further, and did not recall one of Turner's trade partners giving Plaintiff a chipping gun to expose the conduits further (id. at 19). He testified that he also did not recall requesting that Commodore or Plaintiff expose the conduits to a deeper length after inspecting it (id. at 20). Rather, Nunez testified that after he inspected the exposed conduit and identified another conduit underneath it, he "essentially said that the work was done for the date because it [*5]looked like everything was really close to each other in terms of conduits" (id. at 25), and that he "would have to go and talk to the project manager of Commodore, along with other trade partners to come up with a plan how we were going to do the work" (id. at 25-26). He testified that, at the time of the explosion, he was in front of the loading dock, approximately fifty (50) feet from the site of the incident, and heard, but did not see, the incident occur (id. at 20-22).

 PROCEDURAL HISTORY
Plaintiff timely filed a notice of claim and testified at a 50-H hearing on May 5, 2016 (NYSCEF Doc No. 145). On August 10, 2016, Plaintiff commenced this action by filing a summons and complaint in Supreme Court, Queens County, which interposes causes of action against the City of New York (the "City"), the Department of Transportation ("DOT"), New York City Department of Environmental Protection, Con Edison, and Turner (NYSCEF Doc No. 13). Con Edison and Turner filed timely answers, and the City filed an answer on behalf of itself and on behalf of the New York City Department of Transportation and the New York City Department of Environmental Protection. The City, Con Edison, and Turner all interpose cross-claims against each other in their respective answers. On December 19, 2016, Turner filed a Third-Party Complaint against Commodore. Commodore served an answer to Turner's Third-Party Complaint on February 16, 2017.
On January 4, 2017, the City moved the Supreme Court, Queens County for a change of venue to New York County (NYSCEF Doc No. 126) The motion was granted by an order dated February 28, 2017, and the matter was transferred to New York County (NYSCEF Doc No. 127). On July 20, 2018, Plaintiff commenced a second action for the same injury by filing a summons and complaint against Triumph Construction Corp. ("Triumph"), bearing Supreme Court, New York County Index No. 156777/2018. Triumph filed its answer to the complaint on October 16, 2018. The two actions were later consolidated under Index No. 451904/2017 by a so-ordered stipulation dated October 21, 2019 (NYSCEF Doc No. 50).
On October 23, 2018, Con Edison filed a second third-party complaint, which asserts causes of action for contractual indemnification and breach of contract against Triumph, Safeway Construction Enterprises, Inc. ("Safeway"), and Citywide Paving, Inc. ("Citywide"), and asserts a cause of action for negligence against Safeway (NYSCEF Doc No. 9). Triumph filed an answer to the second third-party complaint with cross-complaint against Turner, Commodore, Safeway, and Citywide on December 12, 2018 (NYSCEF Doc No. 20). Citywide filed an answer with cross-claim against Triumph and Safeway on December 17, 2018 (NYSCEF Doc No. 24). Safeway filed an answer with cross-claim against the City, the New York City Department of Environmental Protection, Con Edison, Turner, Commodore, Triumph, and Citywide on January 18, 2019 (NYSCEF Doc No. 25). Safeway filed an answer to Safeway's cross-claim on February 5, 2019 (NYSCEF Doc No. 28), Triumph filed an answer on February 8, 2019 (NYSCEF Doc No. 30), Commodore filed an answer on October 21, 2019 (NYSCEF Doc No. 47), and Triumph filed an answer to Turner's cross-claim on October 16, 2020 (NYSCEF Doc No. 61).
Plaintiff filed the note of issue on April 20, 2023 (NYSCEF Doc No. 112). On July 29, 2023, Commodore moved, by order to show cause, to compel Con Edison to produce Benjamin Aguanno ("Aguanno") or another individual who was present at the pre-work meeting where Turner purportedly asked that Con Edison de-energize the conduits at the worksite for a deposition (NYSCEF Doc No. 117). On July 31, 2023, the court declined to sign the order to show cause, noting that Defendants failed to demonstrate a legally sufficient basis to vacate the [*6]note of issue or for a further deposition of Con Edison (NYSCEF Doc No. 138). In so finding, the court noted that the first Con Edison deposition was completed ten months before the note of issue was filed, and that no unusual or unanticipated circumstances developed after the note of issue was filed to warrant vacatur of the note of issue (id.). Commodore filed an appeal of the court's order, which was dismissed by an order dated May 7, 2024 (NYSCEF Doc No. 333). 
On August 17, 2023, Triumph moved for summary judgment to dismiss the complaint and all cross-claims against it (NYSCEF Doc No. 154). Citywide similarly moved for summary judgment to dismiss the complaint and all cross-claims against it on August 18, 2023 (NYSCEF Doc No. 225). Both motions were unopposed and were granted by two orders of this court dated March 19, 2024, and the complaint and all cross-claims were dismissed as against Triumph and Citywide (NYSCEF Doc Nos. 328, 329).
Con Edison now moves for summary judgment to dismiss all claims and cross-claims against it (Motion Seq. 004). Turner cross-moves against Con Edison's motion for an order compelling Con Edison to produce Aguanno for a deposition, which Con Edison opposes. Separately, Turner moves for summary judgment to dismiss all claims and cross-claims against it, and Plaintiff cross-moves for summary judgment in Plaintiff's favor against Turner and/or Commodore on the issue of liability under Labor Law §§ 200 and 241 (6) (Motion Seq. 006). Commodore also moves for summary judgment to dismiss all claims and cross-claims against it (Motion Seq. 007). Finally, Plaintiff moves for leave to amend the complaint to specifically plead causes of action based on Labor Law §§ 200 and 241 (6) (Motion Seq. 009).

DISCUSSION
A motion for summary judgment "shall be granted if, upon all the papers and proofs submitted, the cause of action or defense shall be established sufficiently to warrant the Court as a matter of law in directing judgment in favor of any party" (CPLR § 3212[b]). "The proponent of a motion for summary judgment must demonstrate that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law" (Dallas-Stephenson v Waisman, 39 AD3d 303, 306 [1st Dept 2007]). The movant's burden is "heavy," and "on a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party" (William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh, 22 NY3d 470, 475 [2013][internal quotation marks and citation omitted]). Upon proffer of evidence establishing a prima facie case by the movant, the party opposing a motion for summary judgment bears the burden of producing evidentiary proof in admissible form sufficient to require a trial of material questions of fact (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). "A motion for summary judgment should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility" (Ruiz v Griffin, 71 AD3d 1112, 1115 [2d Dept 2010][internal quotation marks and citation omitted]).
A. Con Edison's Motion
Con Edison moves for summary judgment to dismiss all direct claims, cross-claims, and any other claims of any nature asserted against it in this matter (NYSCEF Doc No. 141, notice of motion). In support of its motion, Con Edison submits, inter alia, a copy of Plaintiff's Bill of Particulars to Con Edison (NYSCEF Doc No. 144), a transcript of Plaintiff's 50-h hearing and deposition, with exhibits thereto (NYSCEF Doc Nos. 145-147), a transcript of the deposition of Vickie Cheung ("Cheung"), Con Edison record searcher and related records (NYSCEF Doc Nos. [*7]132, 148), a transcript of the deposition of Victor Nunez for Turner (NYSCEF Doc No. 133), a transcript of the deposition of Victor G. Starostiak for Commodore (NYSCEF Doc No. 150), a transcript of the deposition of Triumph Construction Corp. (NYSCEF Doc No. 151), Affidavit of Benjamin Aguanno (NYSCEF Doc No. 152), and Affidavit of Pedro Corredor (NYSCEF Doc No. 153).
At a deposition of Cheung taken on June 21, 2022, Cheung testified that her title at Con Edison is "Specialist" and her position entails searching records and testifying regarding the results at depositions (NYSCEF Doc No. 132). Cheung testified that a Con Edison employee searched for records pertaining to the intersection of Maiden Lane and William Street in Manhattan for the search dates of July 25, 2013 to July 25, 2015 (id. at 8). In the search, Con Edison found seven opening tickets, one payment order, sixteen DOT permits, one corrective action request, and three emergency control system tickets in the search (id. at 9). Cheung testified that these records indicate that Triumph, working as Con Edison's contractor, damaged FRB communication cables in the vicinity of the location where Plaintiff was injured and completed work in the area in March and May 2014 (id. at 21-24, 29-30, 32-33). There were no records of work by Con Edison or its contractor performing work at the location on the date of Plaintiff's injury (id.). Con Edison was notified of plaintiff's alleged incident after the Fire Department contacted Con Edison (id. at 12-15).
Con Edison also submits affidavits of Aguanno and Pegro Corredor ("Corredor") in support of its motion (NYSCEF Doc No. 152). Aguanno attests that he is employed as a Section Manager in Con Edison's Customer Engineering Department under Electric Operations (id. ¶ 1). At the request of Con Edison's Legal Services Department, he reviewed the sign-in sheet for a July 1, 2015 meeting, which is annexed to the deposition (id. ¶ 2, exhibit 1). The sign-in sheet has a DOT logo at the top of the page and bears the title "LMBCO Meeting Sign-in Sheet" (id.). Attendees listed on the sheet include representatives from NYC DOT/LMBCO, Turner, FRB, Metro Loft Management, William Vitacco Associates, Rocky Panetta, and Con Edison (id.). Aguanno attests that "Con Edison was not asked as the meeting to deenergize any electric/feeder lines inside of a conduit," and "the meeting was specifically about the high-pressure main extension and service to 84 William St" (id. ¶ 2). Additionally, Aguanno attests that a contractor performing excavation work in a sidewalk or roadway is required to call 811 and request to mark-out any underground utilities such as electric, gas, steam, or communication utilities, and New York State "requires this call so that contractors can safely dig and work in close proximity to utilities" (id. ¶ 4). He concludes that, based on his experience, "contractors routinely perform underground work in close proximity to live electrical feeders without incident if proper procedures are followed" (id.).
In his affidavit, Corredor attests that he is a Project Construction Specialist currently working in Con Edison's Construction Quality Assurance Department (NYSCEF Doc No. 153, Corredor aff ¶ 1). His duties include, but are not limited to, searching for Code 753 records maintained in the normal course of business (id.). Corredor further attests that, "pursuant to NYS regulations, contractors and/or excavators are required to call 811 to request code 753 mark-outs for roadway and/or sidewalk work to perform safe digging and to protect underground facilities" (id. ¶ 2). The mark-outs identify the location of all utilities, including electric (id.). "The call for the mark-outs is required to be made at least 2-10 days before the proposed date of excavation" (id. ¶ 2). Corredor performed a search for any Code 753 notifications of excavation work at the intersection of William Street and Maiden Lane and thirty (30) feet beyond the intersection from [*8]May 1, 2015 to July 31, 2014 (id. ¶ 3). Based on the results of the search, Corredor concludes that neither Turner nor Commodore made a Code 753 call or notification for the intersection during that time (id. ¶ 4).
Relying on these submissions, Con Edison argues that it is entitled to summary judgment because Con Edison is not liable to plaintiff under Labor Law § 200, 240, 241 (6) because it does not own the property where Plaintiff was injured, did not hire or control Turner or Commodore, and neither was performing work for Con Edison's benefit. Con Edison further argues that it is not liable for common law negligence or under Labor Law § 200 because it did not control or have the authority to control Plaintiff's work and because Con Edison did not perform any work at the location of Plaintiff's injury. Finally, Con Edison asserts that there is no negligence on the part of Con Edison because Turner and Commodore failed to request a "mark-out" of utilities in the roadway before commencing their work pursuant to 16 NYCRR § 753.
Plaintiff, Turner, and Commodore oppose Con Edison's motion. Plaintiff contends that Con Edison was negligent because it knew Turner and Commodore were scheduled to begin work at the location, but did not ensure that the conduits were de-energized or ensure the area was properly marked out as required by 16 NYCRR § 753 (NYSCEF Doc No. 255, Matarangas affirmation in opposition ¶ 8). Plaintiff asserts that there is a question of fact regarding whether Con Edison should have ensured that he was properly protected from the energized conduits before he was permitted to begin work on the assigned excavation (id. ¶ 9). Plaintiff asserts that Con Edison was negligent under Labor Law § 241 (6) based on Industrial Code 23-1.13 in failing to ascertain where an electric source was located prior the work beginning; failing to provide warning signs; permitting Plaintiff to work in such proximity to an electric source; and failing to properly protect Plaintiff from an electric shock and/or explosion.
Turner opposes Con Edison's motion and argues that the court should disregard the Aguanno affidavit because Con Edison did not produce Aguanno for a deposition (NYSCEF Doc No. 270, Erickson affirmation in opposition ¶ 15-23), that Con Edison has not demonstrated that it was not required to de-energize the conduits at the subject location, and that a question of fact exists regarding whether Con Edison satisfied a duty to maintain its conduits in good condition (id. ¶¶ 24-26). Turner also cross-moves to compel Con Edison to produce Aguanno for a deposition. Con Edison opposes the cross-motion.
Commodore opposes the motion and contends that there is no evidence indicating that Con Edison is completely free of negligence and that questions of material fact exist regarding Con Edison's knowledge regarding the conduits still being powered on July 25, 2015 (NYSCEF Doc No. 286, El Arnaouty affirmation in opposition ¶¶ 3-4). Commodore also alleges that the Cheung affidavit is insufficient to satisfy Con Edison's burden on the motion.
As an initial matter, Turner's cross-motion for an order compelling Con Edison to produce Aguanno for a deposition is denied. The cross-motion is substantially similar to, and seeks the same relief as, the order to show cause filed by Commodore on July 29, 2023 (NYSCEF Doc No. 117). The order to show cause was brought before Justice Judy H. Kim, who previously presided over this case. Justice Kim declined to sign the order to show cause and made a substantive determination regarding the merits of the motion, finding that it was untimely brought and noting that the deposition was taken ten months before the note of issue was filed and that Commodore failed to cite any unusual or unanticipated circumstances to warrant vacatur of the note of issue. An appeal of this order was subsequently dismissed. Not only is this substantive determination law of the case that cannot be relitigated (see Glynwill Invs., N.V. v [*9]Shearson Lehman Hutton, Inc., 216 AD2d 78, 79 [1st Dept 1995]), but Turner's motion suffers the same defects as Commodore's order to show cause. Turner's motion was untimely made over a year after the Con Edison deposition and almost six months after the note of issue was filed. Nor has Turner shown good cause to vacate the note of issue as the information sought is immaterial. Whether Con Edison declined to de-energize the conduits or whether Turner and Commodore never made the request to Con Edison is immaterial because the result is the same in either circumstance—Turner and Commodore were on notice that the conduits were energized, and were, therefore, obligated to take all necessary steps to ensure safe working conditions for Plaintiff (see infra at 12-16). To the extent that Aguanno has relevant knowledge of the 2015 meeting, he may be called as a non-party witness at trial. Therefore, the cross-motion to compel is denied.
To maintain a cause of action in negligence, "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom" (Pasternack v Lab's Corp. of Am. Holdings, 27 NY3d 817, 825 [2016]). "The question of whether a defendant owes a legally recognized duty of care to a plaintiff is the threshold question in any negligence action" (On v BKO Exp. LLC, 148 AD3d 50, 53 [1st Dept 2017]). "In the absence of a duty, as a matter of law, there can be no liability" (Pasternack, 27 NY3d at 825).
Plaintiff's theories of liability in this case are couched in Labor Law §§ 200, 240, 241 (6), and common law negligence. Labor Law §§ 240 and 241 are applicable to property owners, contractors, and their agents (Labor Law §§ 240 [1], 200 [1]). It is undisputed that Con Edison does not own the property where the incident occurred, was not a contractor, and did not contract to perform or have the authority to perform the work in this instance. Therefore, it cannot be held liable under Labor Law §§ 240 or 241 (6) (Addonisio v City of New York, 112 AD3d 554, 555 [1st Dept 2013]["Con Ed and Verizon both established that they cannot be held liable under Labor Law § 241(6), since neither one was an owner, contractor, or statutory agent"]; see also Scaparo v. Village of Ilion, 13 NY3d 864 [2009]; Grilikhes v International Tile & Stone Show Expos, 90 AD3d 480, 483 [1st Dept. 2011]).[FN2]
Mere ownership of the energized conduit does not establish Con Edison as an "owner" under the statute, as Plaintiff asserts (Addonisio, 112 AD3d at 554 ["Although a defendant can be deemed an owner for purposes of the statute without holding title to the property, Con Ed is not an owner under these circumstances, since there is no evidence that it contracted to have the work performed or had the authority to control the work site"]). Therefore, neither Labor Law § 240 or 241 (6) impose a duty owed to Plaintiff by Con Edison.
Plaintiff's invocation of the Industrial Code is similarly unavailing. Industrial Code § 23-1.13 (a) plainly states that "None of the provisions of this section shall apply to or in connection with operations conducted by employers, owners, contractors and their agents subject to the jurisdiction of the Public Service Commission." Con Edison is subject to the jurisdiction of the Public Service Commission (Public Service Law § 5 [1][c]). Therefore, Con Edison is not [*10]subject to the provisions of Industrial Code § 23-1.13.
Labor Law § 200 "codifies landowners' and general contractors' common-law duty to maintain a safe workplace" (Ross, 81 NY2d at 505). Con Edison was neither the landowner, general contractor, or Plaintiff's employer. Liability under Labor Law § 200 or the common law "may arise from either the means and methods of plaintiff's work or a dangerous condition on the site or both" (Herrero v 2146 Nostrand Ave. Assocs., LLC, 193 AD3d 421, 421 [1st Dept 2021], citing Cappabianca v Skanska USA Bldg. Inc., 99 AD3d 139, 144 [1st Dept 2012]). There has been no showing that Con Edison exercised any control over the means and methods of Plaintiff's work or that Con Edison created a dangerous condition at the worksite that was the proximate cause of Plaintiff's injury. Without a doubt, excavation near energized conduits or other utilities is inherently dangerous work, which is evidenced by the close regulation of this work by the Labor Law and Code 753. However, there is no evidence that prior damage to the conduits proximately caused Plaintiff's injuries, rather than the means and method by which the excavation was conducted. Mere speculation is insufficient to raise an issue of material fact for trial (Espinal v Trezechahn 1065 Ave. of Americas, LLC, 94 AD3d 611, 613 [1st Dept 2012]). Moreover, no party cites to any affirmative duty for Con Edison to deenergize the conduits. Rather, the Labor Law and Code 753 impose duties on owners, contractors, employers, and excavators to ensure safe excavation practices around energized or potentially energized conduits. Similarly, there is no evidence in the record that any party requested Code 753 mark-outs and there is no statutory obligation for Con Edison to perform mark-outs, absent a request for same (see generally, 16 NYCRR § 753-4.5 [Operator's Response to Notice][emphasis added]).
Finally, any duty that Con Edison had to warn Plaintiff of the purported "dangerous condition" was discharged when Turner and Commodore were notified that the conduits were energized (Taylor v Levy, 252 AD2d 495, 495-496 [2d Dept 1998]["It is undisputed that the [plaintiff's] employer was aware of the alleged dangerous condition. Therefore, any duty on the part of the defendants as owners of the premises was discharged."]; see also Brown v Consol. Edison Co. of New York, 39 AD2d 539, [1st Dept 1972]). Accordingly, the motion for summary judgment is granted and the cross-motion to compel is denied.
B. Turner's Motion and Plaintiff's Cross-Motion
Turner moves pursuant to CPLR § 3212 for summary judgment to dismiss all claims and cross-claims against it and for summary judgment on its third-party claims for contractual indemnification, common law indemnification, and contribution against Commodore (Motion Seq. 006). Plaintiff opposes Turner's motion and cross-moves for summary judgment in Plaintiff's favor against Turner and/or Commodore on the issue of liability under sections 200 and 241 (6) of the Labor Law. Commodore opposes the portion of the motion that seeks contribution and indemnification and separately moves for summary judgment to dismiss Turner's third-party cause of action for common law indemnification (Motion Seq. 007).
As a threshold issue, Turner and Commodore oppose Plaintiff's cross-motion on the grounds that it was untimely filed on September 2, 2023, more than 120 days after Plaintiff filed the note of issue on April 20, 2023. Generally, a motion for summary judgment "shall be made [*11]no later than one hundred twenty days after the filing of the note of issue, except with leave of court on good cause shown" (CPLR § 3212[a]). A showing of "good cause" requires "a showing of good cause for the delay in making the motion—a satisfactory explanation for the untimeliness—rather than simply permitting meritorious, nonprejudicial filings, however tardy" (Brill v City of New York, 2 NY3d 648, 652 [2004]). However, an untimely cross-motion for summary judgment may be considered by the court where a timely motion for summary judgment was made on "nearly identical" grounds (Jarama v 902 Liberty Ave. Hous. Dev. Fund Corp., 161 AD3d 691, 691-692 [1st Dept 2018]; Guallapa v Leon D. DeMatteis Constr. Corp., 121 AD3d 416, 419-420 [1st Dept 2014]). Plaintiff cross-moves for summary judgment on the issue of liability under Labor Law §§ 200 and 241 (6). The issue of liability under Labor Law §§ 200 and 241 (6) was raised in both Turner's initial motion and Commodore's motion for summary judgment, which was contemporaneously made.
Turner also argues that Plaintiff cannot seek summary judgment for claims under Labor Law §§ 200 and 241 (6) because he did not plead causes of action under these sections in the complaint. Notably, the court is empowered to search the record and award summary judgment to a nonmoving party (CPLR § 3212[b]["If it shall appear that any party other than the moving party is entitled to a summary judgment, the court may grant such judgment without the necessity of a cross-motion."]) Additionally, Plaintiff has now moved to amend the complaint to plead these causes of action, and defendants will suffer no prejudice from the proposed amendment (see infra at 21-22). Because Plaintiff pleaded violations of Labor Law §§ 200 and 241 (6) in his Bill of Particulars, Turner was on notice that he intended to move forward with claims under these sections. Therefore, the court will consider Plaintiff's cross-motion for summary judgment.
a. Labor Law§ 240
Labor Law § 240 (1) provides the following, in relevant part:
All contractors and owners and their agents . . . in the erection . . . of a building . . . shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.
It is undisputed that Plaintiff's injury was not caused by a gravity-related incident. Therefore, he has no viable cause of action arising under Labor Law § 240, and Turner's motion is granted with respect to this section.
b. Labor Law § 241 (6)
The purpose of Labor Law § 241 (6) is "to protect workers engaged in duties connected to the inherently hazardous work of construction, excavation or demolition" (Nagel v D & R Realty Corp., 99 NY2d 98, 101 [2002]). In relevant part, Labor Law § 241 (6) provides the following:
All contractors and owners and their agents . . . when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:
6. All areas in which construction, excavation or demolition work is being performed [*12]shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work . . . shall. comply therewith.
(Labor Law § 241 [6]).
Labor Law § 241 (6) is a "hybrid" statute that "reiterates the general common-law standard of care," while imposing a nondelegable duty with respect to compliance with rules of the Commissioner of the Department of Labor which contain specific, positive commands (Bazdaric v Almah Partners LLC, 41 NY3d 310, 317 [2024], citing Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 500 [1993]; see also Rizzuto v L.A. Wenger Contr. Co., Inc., 91 NY2d 343, 349-350 [1998]["we have repeatedly recognized that section 241 (6) imposes a nondelegable duty upon an owner or general contractor to respond in damages for injuries sustained due to another party's negligence in failing to conduct their construction, demolition or excavation operations so as to provide for the reasonable and adequate protection of the persons employed therein"]). "Thus, an owner or general contractor is vicariously liable without regard to their fault, and even in the absence of control or supervision of the worksite, where a plaintiff establishes a violation of a specific and applicable Industrial Code regulation" (id., citing Rizzuto., 91 NY2d at 348—350 [internal quotes omitted]). However, "[t]he owner or contractor may raise any valid defense to the imposition of vicarious liability under Labor Law § 241 (6), including contributory and comparative negligence" (Catarino v State of New York, 55 AD3d 467, 468 [1st Dept 2008]). To meet his summary judgment burden, Plaintiff is required to show that (1) the Industrial Sections cited apply under the circumstances presented (2) Turner or Commodore violated the statute's specific commands, (3) this violation alone, or considered with other undisputed factual evidence, constitutes negligence, and (4) the violation caused Plaintiff's injuries (Bazdaric, 41 NY3d at 318).
As the general contractor, Turner is subject to liability under Labor Law § 241 (6) for violations of specific and applicable Industrial Code regulations, including any violations perpetrated by Commodore (Bazdaric, 41 NY3d 317). Plaintiff's Labor Law § 241 (6) claim is predicated on "Turner and/or Commodore's" alleged violations of Industrial Code sections 22 NYCRR § 23-1.13 (b)(1)-(6), (8) and 23-1.13 (d)(2)-(3).[FN3]
Turner argues that none of the statutes cited by Plaintiff are applicable in this case, and that subsection (b)(1) "merely sets forth a general standard of care and does not include any concrete specifications" (NYSCEF Doc No. 202, memorandum in support at 10-11). This court disagrees.
At the outset, Section 23-1.13 has broadly been held to be a sufficiently specific provision of the Industrial Code for the purposes of Labor Law § 241 (6) (Hernandez v Ten Ten Co., 31 AD3d 333, 333-334 [1st Dept 2006][Plaintiff's "allegation of a violation of 12 NYCRR § 23-1.13 . . . which provides guidelines to protect workers against electrocution, is sufficiently specific to support a Labor Law § 241 (6) claim"]; Snowden v New York City Transit Auth., 248 AD2d 235, 236 [1st Dept 1998]). The Court of Appeals held in Ross v Curtis-Palmer Hydro-Elec. Co., "for purposes of the nondelegable duty imposed by Labor Law § 241 (6) and the regulations promulgated thereunder, a distinction must be drawn between provisions of the Industrial Code mandating compliance with concrete specifications and those that establish general safety standards by invoking the '[g]eneral descriptive terms' set forth and defined in 12 NYCRR § 23-1.4 (a)" (Ross, 81 NY2d at 505). The "general descriptive terms" include "such general terms as adequate, effective, equal, equivalent, firm, necessary, proper, safe, secure, substantial, sufficient, suitable and other similar terms when used to describe materials, devices, structures, methods and procedures" (12 NYCRR § 23-1.4 [a]).
Industrial Code § 23-1.13 (b)(1) titled "Precautions" provides that "All power lines and power facilities around or near construction, demolition and excavation sites shall be considered as energized until assurance has been given that they are otherwise by qualified representatives of the owners of such power lines or power facilities" (emphasis added). The use of "shall" indicates a specific requirement that employers proceed as if all power lines and power facilities around or near excavation sites are energized until they receive assurance to the contrary. Therefore, Industrial Code § 23-1.13 (b)(1) is a specific and applicable Industrial Code regulation for the purposes of Labor Law § 241 (6) (Ross, 81 NY2d at 505).
Industrial Code § 23-1.13 (b)(2) provides that "[b]efore work is begin at any construction, demolition or excavation site, the employer shall determine the voltage levels of all energized power lines and power facilities around or near such site. Where two or more voltages are available at a job site, all electrical equipment and circuits shall be appropriately identified. Such identification shall include voltage level and phase."
Industrial Code §§ 23-1.13 (b)(3) and (4) provide the following, respectively:
(3) Investigation and warning. Before work is begun the employer shall ascertain by inquiry or direct observation, or by instruments, whether any part of an electric power circuit, exposed or concealed, is so located that the performance of the work may bring any person, tool or machine into physical or electrical contact therewith. The employer shall post and maintain proper warning signs where such a circuit exists. He shall advise his employees of the locations of such lines, the hazards involved and the protective measures to be taken.
(4) Protection of employees. No employer shall suffer or permit an employee to work in such proximity to any part of an electric power circuit that he may contact such circuit in the course of his work unless the employee is protected against electric shock by de-energizing the circuit and grounding it or by guarding such circuit by effective insulation or other means. In work areas where the exact locations of underground electric power lines are unknown, persons using jack hammers, bars or other hand tools which may contact such power lines shall be provided with insulated protective gloves, body aprons and footwear.
Each of these Industrial Code subsections set forth concrete specifications and obligations that must be undertaken by the employer in connection with excavation around or near energized power lines and facilities.[FN4]
Nunez testified that Turner knew the conduits were energized prior to the July 2015 meeting and asked Con Edison to de-energize the conduits, and Con Edison declined (NYSCEF Doc No. 134, Nunez deposition tr at 109, 137). Although Con Edison disputes that it was asked to de-energize the conduits, there is no question of fact that Turner and Commodore were on notice that the conduits were energized, and were, therefore, obligated to take all necessary steps to ensure safe working conditions for Plaintiff, as set forth in the Industrial Code.
Turner's contention that Industrial Code § 23-1.13 subsections (b)(2) and (3) do not apply or that it did not violate subsection (b)(4) because it relied on a map provided by FRB which proved to be incorrect regarding the depth of the second set of conduits is unpersuasive (NYSCEF Doc No. 202, memorandum in support at 11-12). Nunez testified that, based on the drawings provided to Turner, they "were under the impression" that the second set of conduits were "at least a foot or two below" the FRB conduits (NYSCEF Doc No. 134, Nunez deposition tr at 54, 107). This demonstrates that the energized conduits were "near" Plaintiff's worksite, but the exact location was unknown. This implicates the specific obligations set forth in Industrial Code § 23-1.13 subsections (b)(1) and (b)(2), which impose obligations where power lines and power facilities "around or near" excavation sites, and subsection (b)(4), which requires employers to provide insulated protective gloves, body aprons and footwear to employees using jackhammers or hand tools "[i]n work areas where the exact locations of underground electric power lines are unknown."
Nevertheless, the record is devoid of evidence that Turner or Commodore determined the voltage levels of the electrified conduit (Industrial Code § 23-1.13 [b][2]), posted warning signs, or notified Plaintiff that the conduits were energized (Industrial Code § 23-1.13 [b][3]), and did not protect Plaintiff from electric shock by de-energizing, grounding, or guarding the circuit [Industrial Code § 23-1.13 [b][4]). Evidence submitted by Con Edison demonstrates that neither Turner nor Commodore requested Code 753 mark-outs (NYSCEF Doc No. 152, Aguanno affidavit ¶ 4). Plaintiff testified that he was provided with gloves, hearing protection, and eye protection, rather than insulated protective equipment to prevent electric shocks called for in Industrial Code § 23-1.13 (b)(4) (NYSCEF Doc No. 219, plaintiff deposition tr at 30-31). This failure to ensure compliance with the specific requirements set forth in subsections (2)-(4) also demonstrates that Turner and Commodore did not operate in a manner that consider the conduits [*13]as energized, as required by subsection (1).
These Industrial Code sections impose obligations that must be undertaken before excavation (see DelRosario v United Nations Fed. Credit Union, 104 AD3d 515, 515-516 [1st Dept 2013][Industrial Code § 23-1.13 (b)(3) and (b)(4) "are clear and specific in their commands that before work is started, it is to be ascertained whether the work will bring a worker into contact with an electric power circuit, and, if so, that the worker not be permitted to come into contact with the circuit without it being de-energized"][emphasis added]). It is, therefore, immaterial whether Nunez directed Commodore or Plaintiff to stop working once he saw the additional conduits because the Industrial Code violations had already occurred.[FN5]
 Accordingly, it is the determination of this court that Turner violated Industrial Code §§ 23-1.13 (b)(1), (2), (3), and (4). These violations constitute negligence that was the proximate cause of Plaintiff's injuries. Plaintiff is, therefore entitled to summary judgment with respect to Labor Law § 241 (6).
Industrial Code § 23-1.13 (b)(5) titled "Guarding of switches or other circuit interrupting devices" provides that "[i]f protection for employees consists of de-energizing circuits, employers shall cause open switches or other circuit interrupting devices to be guarded against inadvertent closing until such employees are no longer exposed." This section is not relevant here because no circuits were de-energized. Therefore, Turner is entitled to summary judgment with respect to Industrial Code § 23-1.13 (b)(5).
Industrial Code § 23-1.13 (b)(6) provides that "[a] least five normal working days before work is begun within 10 feet of any live overhead power line or before any excavation work is performed which might contact or disturb a live underground power line, the employer shall notify in writing the utility whose power line may be affected." The Nunez testimony indicates that Turner notified Con Edison of its intention to perform excavation work at the worksite, but the record is unclear regarding whether or when a request was made in writing. Therefore, a material question of fact exists regarding whether Turner complied with Industrial Code §§ 23-1.13 (b)(6).
Industrial Code § 23-1.13 (b)(8) provides that "[a]ny wiring found to have cracked insulation or insulation deteriorated in any other way shall be immediately removed from service and discarded." It is undisputed that neither Turner nor Commodore owned the conduits, and there is no evidence in the recording showing that either Turner or Commodore had the authority to remove or discard any cracked or deteriorated insulation at the worksite. Therefore, Turner is entitled to summary judgment with respect to Industrial Code §§ 23-1.13 (b)(8).
Finally, Industrial Code §§ 23-1.13 (d)(2) and (3) pertain to "High-voltage power circuits (over 300 volts to ground)." Plaintiff asserts that he met a 15,000-volt electrical power source, but nothing in the evidentiary record indicates the specific voltage of the conduits in question, and this would likely require expert testimony. Therefore, a material question of fact exists [*14]regarding the applicability of these provisions.
Commodore's argument that the motion should be denied because it has not been established that Plaintiff was free from negligence is unavailing. Although defendants may raise contributory and comparative negligence as defenses, these defenses go to the diminution of damages and are not a bar to summary judgment on the issue of liability (Catarino v State of New York, 55 AD3d 467, 468 [1st Dept 2008]; Rodriguez v City of New York, 31 NY3d 312, 320-321 [2018]; Bucci v. City of New York, 223 AD3d 453, 455 [1st Dept 2024][plaintiff was not required to demonstrate freedom from comparative fault in order to be awarded summary judgment on Labor Law § 241(6) claim]).
Based on the foregoing, Turner's motion for summary judgment is granted only as it pertains to liability pursuant to Labor Law § 241 (6) arising from violations of Industrial Code §§ 23-1.13 (b)(5) and (8) and denied as to the balance. Plaintiff's cross-motion for summary judgment as to liability pursuant to Labor Law § 241 (6) arising from violations of Industrial Code §§ 23-1.13 (b)(1)-(4) is granted, and denied as to Industrial Code §§ 23-1.13 (b)(5), (6), (8) and Industrial Code §§ 23-1.13 (d)(2) and (3).
c. Labor Law§ 200 and Common Law Negligence
Labor Law § 200 (1) "codifies landowners' and general contractors' common-law duty to maintain a safe workplace" (Ross, 81 NY2d at 505) as follows:
"All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons. The board may make rules to carry into effect the provisions of this section"
(Labor Law § 200 [1]).
Liability under Labor Law § 200 or the common law "may arise from either the means and methods of plaintiff's work or a dangerous condition on the site or both" (Herrero v 2146 Nostrand Ave. Assocs., LLC, 193 AD3d 421, 421 [1st Dept 2021], citing Cappabianca v Skanska USA Bldg. Inc., 99 AD3d 139, 144 [1st Dept 2012]). Where the worker's injury results from a dangerous or defective premises condition, "liability depends on whether the owner or general contractor created or had actual or constructive notice of the hazardous condition" (Bayo v 626 Sutter Ave. Assoc., LLC, 106 AD3d 648, 648 [1st Dept 2013]). In contrast, where a plaintiff's injury stems from the means and methods by which the work is performed, including dangerous or defective equipment provided by the plaintiff's employer, "the owner or general contractor is liable if it actually exercised supervisory control over the injury-producing work" (Cappabianca, 99 AD3d at 144; see also Foley v Consolidated Edison Co. of NY, Inc., 84 AD3d 476, 477 [1st Dept 2011]). In rare instances, both theories of liability are implicated (Herrero v 2146 Nostrand Ave. Assocs., LLC, 193 AD3d 421, 421 [1st Dept 2021]; Reyes v Arco Wentworth Mgt. Corp., 83 [*15]AD3d 47, 51-52 [2d Dept 2011]). In these so-called "hybrid" cases, a defendant is entitled to summary judgment "only when the evidence exonerates it as a matter of law for all potential concurrent causes of the plaintiff's accident and injury, and when no triable issue of fact is raised in opposition as to either relevant liability standard" (Reyes, 83 AD3d 47).
Turner asserts that the case falls only into the "means and method" category, while Plaintiff asserts that the case implicates both theories. Assuming, arguendo, that the case implicates both theories of liability, there are nonetheless material issues of fact that preclude summary judgment. "It is well settled that an implicit precondition to [the duty imposed on owners and contractors] is that the party to be charged with that obligation 'have the authority to control the activity bringing about the injury to enable it to avoid or correct an unsafe condition'" (Rizzuto, 91 NY2d at 353, citing Russin v Picciano & Son, 54 NY2d 311, 317 [1981][emphasis original]). While it is undisputed that Turner was aware that energized conduits were near the excavation site, questions of material fact exist regarding whether and to what extent Turner exercised control or supervision over Plaintiff's work. Both Plaintiff and Starostiak testified that Turner's supervisor, Victor Nunez, was present at the site of the incident moments before the explosion, supervised Plaintiff's work alongside Commodore employees, and gave Plaintiff instructions to keep digging after the conduits were exposed (NYSCEF Doc Nos. 187, plaintiff 8/29/18 deposition tr at 38-39, 61, 88, ln 4-6; NSYCEF Doc No. 194, Starostiak deposition tr at 19). Plaintiff also testified that his foreman told him that "Turner was running the show" (NYSCEF Doc Nos. 187, plaintiff 8/29/18 deposition tr at 39). Nunez denies having given such instruction (NYSCEF Doc No. 134, Nunez deposition tr at 20, 25-26). Whether Turner exercised control over Plaintiff's work on the date of the incident is a question of fact that must be resolved by a jury. Therefore, both motions for summary judgment are denied with respect to Labor Law § 200.
d.Negligent Hiring
"[W]here an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of respondeat superior, no claim may proceed against the employer for negligent hiring or retention" (Karoon v New York City Transit Auth., 241 AD2d 323, 324 [1st Dept 1997]). Whereas there is no allegation or evidence that any Turner employee was acting outside the scope of their employment in connection with Plaintiff's injury, Plaintiff cannot proceed on any claim for negligent hiring or retention. Therefore, Plaintiff's cause of action for negligent hiring or retention is dismissed.
e. Indemnification
Finally, Turner moves for summary judgment on its third-party claims for contractual and common law indemnification and contribution causes of action against Commodore. Turner also moves for summary judgment dismissing all cross-claims for contractual indemnification asserted against it. Commodore opposes the motion and separately moves for summary judgment to dismiss Turner's cause of action for common law indemnification and contribution on the grounds that Plaintiff did not suffer a "grave injury" as defined by Workers' Compensation Law § 11 (Motion Seq. 007). Turner opposes the motion and argues, in the alternative, that if the [*16]court determines that Plaintiff did not sustain a grave injury and dismisses Turner's claims for common law contribution and indemnification, Turner remains entitled to contractual indemnification pursuant to the terms of the agreement between Turner and Commodore. Plaintiff takes no position regarding indemnification and contribution.
"Under New York's workers' compensation scheme, an employee receives medical benefits and compensation for workplace injuries, regardless of fault, paid for by the employer. In exchange for this certain and swift remedy, the employee gives up the right to sue the employer for personal injuries" (New York Hosp. Med. Ctr. of Queens v Microtech Contracting Corp., 22 NY3d 501, 509-510 [2014]). There are few exceptions to this exclusive remedy rule, including an employer's failure to maintain Workers' Compensation coverage, circumstances where the injury results from an intentional tort, and an exception created by the Court of Appeals holding in Dole v. Dow Chemical Co. (30 NY2d 143 [1972]; see Martin Minkowitz, Practice Commentaries, McKinney's Workers' Compensation Law § 11). The Court of Appeals in Dole held that, although a plaintiff could only seek recompense from their employer though the Workers' Compensation Law, other defendants named by the plaintiff in a personal injury action could seek unlimited contribution or indemnification from the plaintiff's employer by virtue of a third-party action (Dole, 30 NY2d at 153).
In response to the holding in Dole, the legislature amended the Workers' Compensation Law in 1996 to explicitly limit an employer's exposure to third-party liability to those situations where the employee suffers a grave injury, or the employer enters into a written contract of contribution or indemnification with the third party (see Contracting Corp., 22 NY3d at 510; Workers' Compensation Law 11[1]). "Grave injury" is defined as "death, permanent and total loss of use or amputation of an arm, leg, hand or foot, loss of multiple fingers, loss of multiple toes, paraplegia or quadriplegia, total and permanent blindness, total and permanent deafness, loss of nose, loss of ear, permanent and severe facial disfigurement, loss of an index finger or an acquired injury to the brain caused by an external physical force resulting in permanent total disability" (Workers' Compensation Law § 11[1]). "[T]he statutory list of grave injuries is intended to be exhaustive, not illustrative" (Dunn v Smithtown Bancorp, 286 AD2d 701, 702 [2d Dept 2001]).
Plaintiff's Bill of Particulars alleges that he sustained numerous injuries as a result of the July 25, 2015 incident, including traumatic brain injury and various neurological and spinal injuries (NYSCEF Doc Nos. 207-210). However, none of these injuries are included in the list of qualifying injuries set forth in Workers' Compensation Law § 11(1) even though Plaintiff contends that he suffered a grave injury. Therefore, Commodore is granted summary judgment dismissing Turner's third-party cause of action for common law indemnification and contribution.[FN6]

Notably, the Workers' Compensation Law only limits third-party recovery under the common law, not in cases where the employer enters into a written contract of contribution or indemnification with the third party. A party is "entitled to full contractual indemnification provided that the intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances" (Karwowski v 1407 Broadway Real Estate, LLC, 160 AD3d 82, 87 [1st Dept 2018][internal quotation omitted]). "To obtain conditional relief on a claim for contractual indemnification, the one seeking indemnity need only establish that it was free from any negligence and may be held liable solely by virtue of . . . statutory or vicarious liability" (Spielmann v 170 Broadway NYC LP, 187 AD3d 492, 494 [1st Dept 2020][internal quotes omitted]). "However, where a triable issue of fact exists regarding the indemnitee's negligence, a conditional order of summary judgment for contractual indemnification must be denied as premature" (id.).
By agreement dated August 28, 2013, Turner contracted with Commodore to perform conduit repair for the Federal Reserve Bank of New York Project (NYSCEF Doc No. 200, contract). The agreement contains the following indemnification provision, under the heading "Assumption of Liability & Indemnity":
ARTICLE XXIII. Throughout this Agreement, the "Indemnified Party (ies)" means Contractor, the Owner, any party required to be indemnified pursuant to the General Contract, and any of their respective officers, agents, servants, or employees, and affiliates, parents and subsidiaries. The Subcontractor hereby assumes the entire responsibility and liability for any and all actual or potential damage or injury of any kind or nature whatsoever (including death, business interruption or toss of use resulting therefrom) to all persons and entities, whether employees of the Subcontractor or any tier of the Subcontractor or otherwise, or to all property; or as a result of a perceived risk of such damage or injury (including actions taken to avoid or contain such actual or potential damage or injury, whether required or incurred by a public authority or otherwise); caused by, resulting from, arising out of or occurring in connection with the execution of the Work, or in preparation for the Work, or any extension, modification, or amendment to the Work by change order or otherwise. Should any claims for such actual or potential damage injury (including death resulting therefrom) be made or asserted, whether or not such claims are based upon an Indemnified Party's alleged active or passive negligence or participation in the wrong or upon any alleged breach of any statutory duty or obligation on the part of an Indemnified Party, the Subcontractor agrees to indemnify and save harmless the indemnified Party from and against any and all such claims and further from and against any and all loss, cost, expense, liability, damage, penalties, fines or injury, including legal fees and disbursements, |hat the Indemnified Party may directly or indirectly sustain, suffer or incur as a result thereof and the Subcontractor agrees to and does hereby assume, on behalf of the Indemnified Party, the defense of any action at law or in equity which may be brought against the Indemnified Party upon or by reason of such claims and to pay on behalf of the Indemnified Party. upon demand, the amount of any judgment that may be entered against the Indemnified Party in any such action. In the event that any such claims, loss, cost, expense, liability, damage. penalties, fines or injury arise or are made, asserted or threatened against the [*17]Indemnified Party, Contractor shall have the right to withhold from any payments due or to become due to the Subcontractor an amount sufficient in its judgment to protect and indemnify the Indemnified Party from and against any and all such claims, loss, cost, expense, liability, damage, penalties, lines or injury, including legal fees and disbursements. or Contractor in its discretion may require the Subcontractor to furnish a surety bond satisfactory to Contractor guaranteeing such protection. which bond shall be furnished by the Subcontractor within live (5) days after written demand has been made therefor.
In furtherance to but not in limitation of the indemnity provisions in this Agreement, Subcontractor hereby expressly and specifically agrees that l(s obligation to indemnify, defend and save harmless as provided in this Agreement shall not in any way be affected or diminished by any statutory or constitutional immunity it enjoys from suits by its own employees or from limitations of liability or recovery under worker's compensation laws.
IN THE EVENT THAT THE LAW OF THE STATE IN WHICH THE PROJECT IS LOCATED (OR OTHER APPLICABLE LAW) LIMITS THE INDEMNITY OBL1GATIONS OF THE SUBCONTRACTOR. TFIEN THE INDEMNITY OBLIGATIONS OF THE SUBCONTRACTOR SHALL BE ENFORCED TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, AND THIS ARTICLE SHALL BE CONSTRUED TO CONFORM TO SUCH LAW.
(id. at 10-11).
This provision clearly sets forth an intention for Commodore to indemnify Turner for claims "caused by, resulting from, arising out of or occurring in connection with the execution of" Commodore's work under the contract. Nevertheless, questions of material fact exist regarding Turner's own negligence in connection with Plaintiff's injury (see supra at 18). Therefore, summary judgment for contractual indemnification must be denied as premature.
Turner's motion for summary judgment to dismiss all remaining cross-claims for contractual indemnification asserted against it by Con Edison, the City, and Triumph is granted because none of these parties have a binding agreement for contractual indemnification with Turner.
C. Plaintiff's Motion to Amend
Pursuant to CPLR Rule 3025, a party may amend or supplement their pleading "at any time by leave of court or by stipulation of all parties" (CPLR § 3025 [a]). "Leave shall be freely given upon such terms as may be just" (id.). "[I]n the absence of prejudice or surprise resulting directly from the delay in seeking leave, applications to amend are to be freely granted unless the proposed amendment is palpably insufficient or patently devoid of merit" (Favourite Ltd. v Cico, 208 AD3d 99, 108 [1st Dept 2022]). A proposed amendment "is devoid of merit where the allegations are legally insufficient" (Reyes v BSP Realty Corp., 171 AD3d 504, 504 [1st Dept 2019]). The party opposing the amendment bears a heavy burden of showing prejudice (McGhee [*18]v Odell, 96 AD3d 449, 450 [1st Dept 2012]), or demonstrating that the facts as alleged are unreliable or insufficient to support the motion (Peach Parking Corp. v 346 W. 40th St., LLC, 42 AD3d 82, 86 [1st Dept 2007]).
Plaintiff seeks leave to amend to add a cause of action under Labor Law §§ 200 and 241 (6). Although Plaintiff seeks leave to amend after eight years of litigation and the filing of the note of issue, "mere lateness is not a barrier to . . . amendment. It must be lateness coupled with significant prejudice to the other side" (Jacobson v Croman, 107 AD3d 644, 645 [1st Dept 2013]). "The kind of prejudice required to defeat an amendment . . . must . . . be a showing of prejudice traceable not simply to the new matter sought to be added, but also to the fact that it is only now being added. There must be some special right lost in the interim, some change of position or some significant trouble or expense that could have been avoided had the original pleading contained what the amended one wants to add" (id.). Whereas Plaintiff pleaded violations of Labor Law §§ 200 and 241 (6) in the Bill of Particulars (NYSCEF Doc Nos. 69, 144, 207), and each defendant made substantive arguments regarding these claims in their respective motions for summary judgment, there can be no dispute that Defendants were on notice of Plaintiff's intention to pursue these causes of action, nor will any defendant suffer prejudice as a result of the amendment. Likewise, the proposed amendments are neither palpably insufficient nor patently devoid of merit (see supra at 11-18). Therefore, the motion to amend is granted.
Accordingly, it is
ORDERED that Con Edison's motion for summary judgment (Motion Seq. 004) is granted, and Turner's cross-motion to compel is denied; and it is further
ORDERED that Turner's motion for summary judgment (Motion Seq. 006) is granted in part and to the extent that Plaintiff's Labor Law § 240 claims, cause of action for negligent hiring or retention, Plaintiff's claims arising Industrial Code §§ 23-1.13 (b)(5) and (b)(8), and all cross-claims for contractual indemnification asserted against Turner are dismissed, and the motion is denied as to the remainder; and it is further
ORDERED that Plaintiff's cross-motion (Motion Seq. 006) for summary judgment is granted in part and to the extent that Plaintiff is granted summary judgment against Turner on the issue of liability for Plaintiff's claims arising under Labor Law § 241 (6) and Industrial Code §§ 23-1.13 (1), (2), (3), (4), and is denied as to the remainder; and it is further
ORDERED that Commodore's motion for summary judgment (Motion Seq. 007) is granted and Turner's third-party cause of action for common law indemnification against Commodore is dismissed; and it is further
ORDERED that the plaintiff's motion for leave to amend the complaint (Motion Seq. 009) is granted, and the amended complaint in the proposed form annexed to the moving papers shall be deemed served upon service of a copy of this order with notice of entry thereof; and it is further
ORDERED that the defendants shall serve answers to the amended complaint or otherwise respond thereto within 20 days from the date of said service; and it is further
ORDERED that counsel are directed to appear for a settlement conference in Room 320 at 80 Centre Street, Room 320, New York, New York on August 13, 2024 at 2:00 p.m.
DATE 7/11/2024
HASA A. KINGO, J.S.C.

Footnotes

Footnote 1:Code 753 mark-outs refers to 16 NYCRR Part 753 ("Code 753"), statutes designed to protect underground facilities by setting forth procedures with which excavators must comply prior to and during excavation by requiring "excavators" to contact the One Call or 811 Call Before You Dig to notify utility providers of scheduled excavation and request a "mark out" of utilities. See NYC Department of Design and Construction "Code Rule 753 Call Before You Dig," available at https://www.nyc.gov/assets/ddc/downloads/publications/presentations/2019%20Code753%20 Training_Final.pdf (last accessed on July 11, 2024).

Footnote 2:Labor Law § 240 is also inapplicable because Plaintiff was not injured in a gravity-related incident (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 500 [1993]; see infra at 12).
Footnote 3:To the extent that Plaintiff purports to move for summary judgment against Commodore directly, the motion is denied Plaintiff did not interpose any claims against Commodore (see Tane v Whipple-Allen Const. Co., 245 AD2d 1061, 1061 [4th Dept 1997][Supreme Court erred in granting plaintiff summary judgment against third-party defendant where plaintiff did not assert any claim against them]) and workers' compensation is an employee's exclusive remedy against their employer for injuries incurred in the scope of their employment, except in certain narrow circumstances not applicable here (Workers Compensation Law § 11[1]).

Footnote 4:Although section 23-1.13 refers to "employers," courts have held that the Industrial Code "applies to persons employed in construction, demolition and excavation operations, to their employers and to owners, contractors and their agents obligated by the Labor Law to provide such persons with safe working conditions and safe places to work" (Johnson v Ebidenergy, Inc., 60 AD3d 1419, 1421 [4th Dept 2009][internal quotation marks and citation omitted]; Rubino v 330 Madison Co., LLC, 150 AD3d 603, 604 [1st Dept 2017]["Appellants, as owner and general contractor, may be held liable for violation of those provisions, even though they impose obligations on the employer, since they have a nondelegable duty to provide adequate safety protections"]).
Footnote 5:Notably, a question of fact exists regarding whether Nunez gave a "stop" order, as this assertion was disputed in the deposition testimony of both Plaintiff and Starostiak.

Footnote 6:Although the court does not reach the parties arguments regarding the anti-subrogation rule, it is noted that the only proof of purported coverage presented is a certificate of insurance, which "is merely evidence of a contract rather than conclusive proof that coverage was procured" (Shala v Park Regis Apartment Corp., 192 AD3d 607, 608 [1st Dept 2021]).